Jeffrey Lewis, *Pro Hac Vice*
Teresa S. Renaker, *Pro Hac Vice*
Margaret E. Hasselman, *Pro Hac Vice*
LEWIS, FEINBERG, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone (510) 839-6824
Facsimile (510) 839-7839

Lead Counsel for Plaintiffs

James I. Singer, Illinois Bar No. 02620499
Matthew B. Leppert, Illinois Bar No. 6283363
SCHUCHAT, COOK & WERNER
1221 Locust Street, Second Floor
St. Louis, MO 63103
Telephone (314) 621-2626
Facsimile (314) 621-2378

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS LIVELY, WILLIS HARMS, and LARRY GRAB, individually and on behalf of a class of all other persons similarly situated, ) ) ) | Case No. 05-63 MJR |
| Plaintiffs, ) | |
| vs. ) | **FIRST AMENDED COMPLAINT (ERISA)** |
| DYNEGY, INC.; ILLINOIS POWER COMPANY; DYNEGY MIDWEST GENERATION, INC.; DYNEGY, INC. BENEFIT PLANS COMMITTEE; LOUIS DOREY, ROBERT D. DOTY, MARIAN M. DAVENPORT, ALEC G. DREYER, JOHN E. FORD, ANDREA LANG, TOM LINTON, LISA Q. METTS, MICHAEL MOTT, MILTON L. SCOTT, R. BLAKE YOUNG, LARRY ALTENBAUMER, CRISTIN CRACRAFT, MELESSA FOX, PRYOR LINDSEY, and NICHOLAS CARUSO, ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Class Action** |
| Defendants. ) | |

**INTRODUCTION**

Pursuant to the Court's Order dated February 15, 2006, Plaintiffs submit this First Amended Complaint.  The First Amended Complaint differs from the original Complaint in the following respects:  Paragraphs 23A-E and 74A-G  have been added and Paragraphs 12 and 24 have been revised.  All other paragraphs of the First Amended Complaint are unchanged from the original Complaint.

Plaintiffs Dennis Lively, Willis Harms, and Larry Grab, individually and on behalf of a class of similarly situated participants in the Illinois Power Company Incentive Savings Plan for Employees Covered Under a Collective Bargaining Agreement Plan ("Plan"), allege the following for their First Amended Complaint:

**NATURE OF CASE**

1.      This is a civil enforcement action brought pursuant to Section 502(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2), on behalf of participants in the Illinois Power Company Incentive Savings Plan for Employees Covered Under a Collective Bargaining Agreement to remedy the Plan's losses on its investments in stock of Dynegy, Inc. ("Dynegy") during the period from February 1, 2000 through the present.

2.      This action alleges that the Plan's fiduciaries breached their duties to its participants by continuing and increasing the Plan's investments in Dynegy stock when they knew or should have known that the value of the stock was inflated due to accounting and other improprieties, and misrepresented or failed to disclose information relevant to the value of the stock, resulting in substantial losses to the Plan and thereby to the participants' retirement savings.

3.      This action seeks relief against the Defendant fiduciaries under ERISA § 409, 29 U.S.C. § 1109, to make the Plan whole for the losses suffered as a result of Defendants' breaches.  Because the violations alleged herein caused losses to the Plan, and not just individual participants, and because ERISA authorizes a plan participant to sue for plan-wide relief for breaches of fiduciary duty, Plaintiffs bring this action on behalf of themselves and all the Plan participants and beneficiaries during the Class Period to recover losses to the Plan.

**JURISDICTION**

4.      Plaintiffs bring this action for declaratory, injunctive, equitable, and monetary relief pursuant to ERISA § 502, 29 U.S.C. § 1132.  This Court has subject matter jurisdiction over Plaintiffs' claims under ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

**VENUE**

5.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because one or more of the defendants resides or may be found in this District, the employee pension benefit plan that is the subject of Plaintiffs' claims is administered in part in this District, and some of the breaches alleged took place in this District.

**PARTIES**

**Plaintiffs**

6.      Plaintiff Dennis Lively is, and at all relevant times has been, a participant in the Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).  At all relevant times, a portion of Mr. Lively's retirement account has been invested in one or more Plan sub-funds that held Dynegy stock.  Mr. Lively has been an employee of Dynegy or its predecessors for 32 years.  Mr. Lively resides in Sparta, Illinois.

7.      Plaintiff Willis Harms is, and at all relevant times has been, a participant in the Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).  At all relevant times, a portion of Mr. Harms's retirement account has been invested in one or more Plan sub-funds that held Dynegy stock.  Mr. Harms has been an employee of Dynegy or its predecessors for 33 years.  Mr. Harms resides in Baldwin, Illinois.

8.      Plaintiff Larry Grab is, and at all relevant times has been, a participant in the Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).   At all relevant times, a portion of Mr. Grab's retirement account has been invested in one or more Plan sub-funds that held Dynegy stock.  Mr. Grab has been an employee of Dynegy or its predecessors for 32 years.  Mr. Grab resides in Steeleville, Illinois.

**Defendants**

9.      Plaintiffs are informed and believe, and based thereon allege, that Defendant
Dynegy, Inc. ("Dynegy"), is an Illinois corporation with its principal place of business in
Houston, Texas.  Dynegy produces and delivers energy, including natural gas, power, coal, and
natural gas liquids.  Dynegy also was formerly engaged in energy marketing and trading.
Plaintiffs are informed and believe, and based thereon allege, that Dynegy has been the plan
sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), since
approximately February 2000.  Plaintiffs are informed and believe, and based thereon allege,
that since approximately February 2000, by reason of its actions, Dynegy was a fiduciary of the
Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised
discretionary authority or discretionary control respecting management of the Plan, exercised
authority or control respecting management or disposition of the Plan's assets, and/or had
discretionary authority or discretionary responsibility in the administration of the Plan.

10.     Plaintiffs are informed and believe, and based thereon allege, that Defendant
Illinois Power Company ("Illinois Power") is an Illinois corporation with its principal place of
business in Decatur, Illinois.  Plaintiffs are informed and believe, and based thereon allege, that
Illinois Power was the Plan Administrator of the Plan within the meaning of ERISA § 3(16)(A),
29 U.S.C. § 1002(16)(A), until a date before April 1, 2004, because it was so designated in the
governing plan instruments.  Plaintiffs are informed and believe, and based thereon allege, by
reason of its status as Plan Administrator and Named Fiduciary and/or by reason of its actions,
Illinois Power was a fiduciary of the Plans within the meaning of ERISA § 3(21), 29 U.S.C. §
1002(21), in that it exercised discretionary authority or discretionary control respecting
management of the Plan, exercised authority or control respecting management or disposition of
the Plan's assets, and/or had discretionary authority or discretionary responsibility in the
administration of the Plan.

11.     Plaintiffs are informed and believe, and based thereon allege, that Defendant
Dynegy Midwest Generation, Inc. ("Dynegy Midwest") is an Illinois corporation with its
principal place of business in Houston, Texas.  Plaintiffs are informed and believe, and based

thereon allege, that since approximately February 2000, by reason of its actions, Dynegy Midwest was a fiduciary of the Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

12.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Dynegy Inc. Benefit Plans Committee was formerly known as the Retirement/Benefit Plans Committee.  The Dynegy Inc. Benefit Plans Committee and the Retirement/Benefit Plans Committee are referred to herein as "the Plan Committee."  Plaintiffs are informed and believe, and based thereon allege, that the Plan Committee has been the Plan Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), since approximately February 2000, because it was so designated in the governing plan instruments.  Plaintiffs are informed and believe, and based thereon allege, that since approximately February 2000, by reason of its status as Plan Administrator and/or by reason of its actions, the Plan Committee was a fiduciary of the Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.  The Plan Committee has been dismissed as a defendant by stipulation of the parties.

13.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Louis Dorey served as a member of the Plan Committee from June 2002 until July 28, 2002. Mr. Dorey also served as Dynegy's Chief Financial Officer from June 2002 until December 2002 and currently serves as Dynegy's Executive Vice-President of Finance.  Mr. Dorey previously served as President of Energy Marketing and Origination at Dynegy.  Plaintiffs are informed and believe, and based thereon allege, that by reason of his status as a Committee member and/or by reason of his actions, Mr. Dorey was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or

1   discretionary control respecting management of the Plan, exercised authority or control

2   respecting management or disposition of the Plan's assets, and/or had discretionary authority or

3   discretionary responsibility in the administration of the Plan.

4          14.     Plaintiffs are informed and believe, and based thereon allege, that Defendant

5   Robert D. Doty, Jr. served as a member of the Plan Committee from at least April 27, 1999 until

6   June 19, 2002.  Mr. Doty served as Executive Vice-President and Chief Financial Officer of

7   Dynegy from at least 1999 until his resignation on June 19, 2002.  Plaintiffs are informed and

8   believe, and based thereon allege, that by reason of his status as a Committee member and/or by

9   reason of his actions, Mr. Doty was a fiduciary of the Plan within the meaning of ERISA §

10   3(21), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or discretionary control

11   respecting management of the Plan, exercised authority or control respecting management or

12   disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility

13   in the administration of the Plan.

14          15.     Plaintiffs are informed and believe, and based thereon allege, that Defendant

15   Marian M. Davenport served as a member of the Plan Committee from July 21, 2000 to at least

16   2001.  Ms. Davenport served as Vice-President of Human Resources from January 2000, and

17   was named Senior Vice-President of Dynegy Global Communications and Dynegy in November

18   2000; from February 2002 until the present, she has served as Vice-President of Legislative and

19   Regulatory Affairs.  Plaintiffs are informed and believe, and based thereon allege, that by reason

20   of her status as a Committee member and/or by reason of her actions, Ms. Davenport was a

21   fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that she

22   exercised discretionary authority or discretionary control respecting management of the Plan,

23   exercised authority or control respecting management or disposition of the Plan's assets, and/or

24   had discretionary authority or discretionary responsibility in the administration of the Plan.

25          16.     Plaintiffs are informed and believe, and based thereon allege, that Defendant

26   Alec G. Dreyer has served as a member of the Plan Committee from May 3, 2002 to the present.

27   Mr. Dreyer also currently serves as the President of Dynegy Generation and was formerly the

28   president of Illinova Generating Company and senior vice president of Illinova Corporation and

1    Illinois Power.  Plaintiffs are informed and believe, and based thereon allege, that by reason of

2    his status as a Committee member and/or by reason of his actions, Mr. Dreyer was a fiduciary of

3    the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised

4    discretionary authority or discretionary control respecting management of the Plan, exercised

5    authority or control respecting management or disposition of the Plan's assets, and/or had

6    discretionary authority or discretionary responsibility in the administration of the Plan.

7          17.    Plaintiffs are informed and believe, and based thereon allege, that Defendant

8    John E. Ford served as a member of the Plan Committee from at least April 27, 1999 until

9    approximately March 31, 2000.  During his tenure on the Plan Committee, Mr. Ford also served

10    as Vice-President of Compensation and Benefits at Dynegy.  Plaintiffs are informed and believe,

11    and based thereon allege, that by reason of his status as a Committee member and/or by reason

12    of his actions, Mr. Ford was a fiduciary of the Plans within the meaning of ERISA § 3(21), 29

13    U.S.C. § 1002(21), in that he exercised discretionary authority or discretionary control

14    respecting management of the Plan, exercised authority or control respecting management or

15    disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility

16    in the administration of the Plan.

17          18.    Plaintiffs are informed and believe, and based thereon allege, that Defendant

18    Andrea Lang has served as a member of the Plan Committee from April 17, 2001 through the

19    present.  Ms. Lang also is, and has been, Senior Vice-President of Human Resources since

20    November 2000.  Prior to November 2000, Ms. Lang was Vice-President of Human Resources

21    for Dynegy Marketing and Trade, a Dynegy subsidiary.  Plaintiffs are informed and believe, and

22    based thereon allege, that by reason of her status as a Committee member and/or by reason of

23    her actions, Ms. Lang was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29

24    U.S.C. § 1002(21), in that she exercised discretionary authority or discretionary control

25    respecting management of the Plan, exercised authority or control respecting management or

26    disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility

27    in the administration of the Plan.

28          19.    Plaintiffs are informed and believe, and based thereon allege, that Defendant

Tom Linton served as a member of the Plan Committee from at least April 27, 1999 until approximately late June 2000.  During his tenure on the Plan Committee, Mr. Linton was also the Vice President of Asset Management for Dynegy.  Plaintiffs are informed and believe, and based thereon allege, that by reason of his status as a Committee member and/or by reason of his actions, Mr. Linton was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

20.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Lisa Q. Metts served as a member of the Plan Committee from at least April 27, 1999 through July 21, 2000.  Ms. Metts was Vice President and Assistant General Counsel for Dynegy from January 2000 through the present.  During her tenure on the Plan Committee, Ms. Metts was responsible for handling legal matters related to Dynegy's SEC filings, its corporate subsidiaries, and human resources.  Plaintiffs are informed and believe, and based thereon allege, that by reason of her status as a Committee member and/or by reason of her actions, Ms. Metts was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that she exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

21.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Michael Mott served as a member of the Plan Committee from September 2002 until he resigned on January 17, 2003.  During his tenure on the Plan Committee, Mr. Mott also was a Senior Vice President and Chief Accounting Officer and Controller of Dynegy and was responsible for overseeing Dynegy's worldwide accounting operations, the development and application of accounting policy and procedure, the leadership and coordination of Dynegy's financial and operational accounting functions, transaction support and internal and external

financial reporting.  Plaintiffs are informed and believe, and based thereon allege, that by reason of his status as a Committee member and/or by reason of his actions, Mr. Mott was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

22.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Milton L. Scott served as a member of the Plan Committee from July 21, 2000 until his resignation on September 16, 2002.  Mr. Scott also served as Executive Vice-President and Chief Administrative Officer of Dynegy from October 1999 until his resignation on September 16, 2002.  As Chief Administrative Officer, Mr. Scott was responsible  for overseeing human resources, risk management and insurance, compliance, and audits.  Plaintiffs are informed and believe, and based thereon allege, that by reason of his status as a Plan Committee member and/or by reason of his actions, Mr. Scott was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

23.     Plaintiffs are informed and believe, and based thereon allege, that Defendant R. Blake Young has served as a member of the Plan Committee from October 2002 to the present. Mr. Young has also served as Executive Vice-President, Administration and Technology and has been responsible for strategic planning, budgeting, and analysis for Dynegy since at least October 2002.  Plaintiffs are informed and believe, and based thereon allege, that by reason of his status as a Committee member and/or by reason of his actions, Mr. Young was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

23A.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Larry Altenbaumer served as a member of the Plan Committee from July 2000 until his resignation on or about June 28, 2004.  During his tenure on the Plan Committee, Mr. Altenbaumer was the President of Illinois Power, and also an Executive Vice President at Dynegy.  Plaintiffs are informed and believe, and based thereon allege, that by reason of his status as a Committee member and/or by reason of his actions, Mr. Altenbaumer was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

23B.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Cristin Cracraft served as a member of the Plan Committee from at least September 2000 until approximately June 2003.  During her tenure on the Plan Committee, Ms. Cracraft served as in-house counsel to Dynegy.  Plaintiffs are informed and believe, and based thereon allege, that by reason of her status as a Committee member and/or by reason of her actions, Ms. Cracraft was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that she exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

23C.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Melessa Fox has served as a member of the Trust Investments Sub-Committee to the Plan Committee ("Sub-Committee") from at least February 2000 to the present.  During her tenure on the Sub-Committee, Ms. Fox has served as the Director of Trust Investments at Dynegy. Plaintiffs are informed and believe, and based thereon allege, that the Sub-Committee was created by the Plan Committee to perform administrative functions related to the Plan. Plaintiffs are informed and believe, and based thereon allege, that by reason of her status as a Sub-committee member and/or by reason of her actions, Ms. Fox was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that she exercised discretionary

1  authority or discretionary control respecting management of the Plan, exercised authority or
2  control respecting management or disposition of the Plan's assets, and/or had discretionary
3  authority or discretionary responsibility in the administration of the Plan.

4       23D.    Plaintiffs are informed and believe, and based thereon allege, that Defendant
5  Pryor Lindsey has served as a member of the Sub-Committee from at least September 2000 to
6  the present.  Plaintiffs are informed and believe, and based thereon allege, that by reason of his
7  status as a Sub-committee member and/or by reason of his actions, Mr. Lindsey was a fiduciary
8  of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised
9  discretionary authority or discretionary control respecting management of the Plan, exercised
10  authority or control respecting management or disposition of the Plan's assets, and/or had
11  discretionary authority or discretionary responsibility in the administration of the Plan.

12       23E.    Plaintiffs are informed and believe, and based thereon allege, that Defendant
13  Nicholas Caruso served as a member of the Plan Committee from January 2002 until his
14  resignation on or about June 29, 2004.  During his tenure on the Plan Committee, Mr. Caruso
15  was Senior Vice President of Dynegy and Dynegy's Chief Financial Officer.  Plaintiffs are
16  informed and believe, and based thereon allege, that by reason of his status as a Committee
17  member and/or by reason of his actions, Mr. Caruso was a fiduciary of the Plan within the
18  meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or
19  discretionary control respecting management of the Plan, exercised authority or control
20  respecting management or disposition of the Plan's assets, and/or had discretionary authority or
21  discretionary responsibility in the administration of the Plan.

22       24.    Defendants Plan Committee, Dorey, Doty, Davenport, Dreyer, Ford, Lang,
23  Linton, Metts, Mott, Scott, Young, Altenbaumer, Cracraft, Fox, Lindsey, and Caruso are
24  referred to collectively herein as the "Plan Committee Defendants."

25  **FACTS**

26  **The Plan's Investment in Company Stock**

27       25.    The Plan is an employee pension benefit plan and employee benefit plan within
28  the meaning of ERISA §§ 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

26.     At all relevant times, the Plan has been a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan has provided for individual accounts for each participant and for benefits based solely upon the amounts contributed to the participants' account and any plan income, expenses, gains, losses, and forfeitures from other accounts which may be allocated to such participants' accounts.

27.     At all relevant times, the Plan's fiduciaries have provided a number of different funds in which participants' Plan account balances may be invested, including a money market fund, a variety of equity funds, and one or more Company Stock funds.  Until February 2000, "Company Stock" was stock of Illinova Corporation, parent company of Illinois Power Company.  After February 2000, "Company Stock" was stock of Dynegy.

28.     At all relevant times, the Plan's participants directed that Plan assets attributable to their salary deferral contributions to the Plan be invested by the Plan's trustees among the investment options that the Plan's fiduciaries made available in the Plan.

29.     At all relevant times, the Plan also provided for Company Matching Contributions and Company Incentive Contributions (collectively "Company Contributions"), requiring that the company match a percentage of each participant's salary deferral contributions and also make an additional incentive contribution in any year in which the company declares a dividend on its common stock.

30.     At all relevant times, the Plan provided that Company Contributions would be made in Company Stock.

31.     From at least June 1997 to approximately April 2004, the Plan provided that participants who had attained at least age 55 and had participated in the Plan for at least 10 years could elect, as to Plan assets in their accounts that were attributable to Company Contributions, to direct the investment of a portion of those assets into investments other than Company Stock. Such an election could be made only in the first 90 days of each Plan year.

32.     From at least June 1997 to prior to April 2004, the Plan provided that the Plan Administrator had the discretion to invest Plan assets attributable to matching contributions made prior to January 1, 1991, in an investment fund of its choice.

33.     Plaintiffs are informed and believe, and based thereon allege, that at some or all relevant times participants were also permitted to direct the investment of Plan assets in their accounts that were attributable to Company Contributions into investments other than Company Stock, after the assets had been invested in Company Stock for five years.

34.     As of no later than April 1, 2004, the Plan permitted participants to direct the investment of Plan assets in their accounts that were attributable to Company Contributions.

35.     At all relevant times, all shares of Company Stock in the Plan were owned by the Plan's trustees on behalf of the Plan.

**Value of the Plan's Investment in Dynegy Stock**

36.     As of December 31, 1999, the value of units in the Plan's Company Contribution fund was $16.71 per unit.

37.     As of February 1, 2000, Illinova merged with Dynegy and all Illinova stock held by the Plan became Dynegy stock.

38.     As of March 31, 2000, the value of units in the Plan's Company Contribution fund was $30.27 per unit.

39.     In April 2000, Dynegy issued its first quarter earnings release, claiming recurring net income of $79.4 million for the quarter and stating that the company was confident that its long-term strategy would "continue to be rewarded with attractive returns."

40.     As of June 30, 2000, the value of units in the Plan's Company Contribution fund was $32.99 per unit.

41.     In July 2000, Dynegy issued its second quarter earnings release, claiming recurring net income of $90.6 million for the quarter and characterizing its results as "outstanding" and reflecting "solid, consistent returns."

42.     As of September 30, 2000, the value of units in the Plan's Company Contribution fund was $54.88 per unit.

43.     In October 2000, Dynegy issued its third quarter earnings release, claiming "the most successful quarter in Dynegy's history" with net recurring income of $176.5 million.  The company stated that it was "confident that this quarter's earnings level [was] sustainable next

year and the company is positioned for continued growth."

44.     As of December 31, 2000, the value of units in the Plan's Company Contribution fund was $54.08 per unit.

45.     In January 2001, Dynegy issued its fourth quarter and fiscal 2000 earnings release, claiming recurring net income for the year of $452 million.

46.     As of March 31, 2001, the value of units in the Plan's Company Contribution fund was $49.35 per unit.

47.     In April 2001, Dynegy issued its first quarter earnings release, claiming recurring net income of $137.5 million and touting its "record first quarter performance."

48.     As of June 30, 2001, the value of units in the Plan's Company Contribution fund was $45.11 per unit.

49.     In July 2001, Dynegy issued its second quarter earnings release, emphasizing its "earnings sustainability."

50.     As of September 30, 2001, the value of units in the Plan's Company Contribution fund was $33.78 per unit.

51.     In October 2001, Dynegy issued its third quarter earnings release, claiming $286 million in recurring net income.  Dynegy expressed confidence that it was "uniquely positioned to benefit from the pronounced 'flight to quality' by companies recognizing the importance of a partnership with an energy provider that possesses a reliable delivery network."

52.     In January 2002, Dynegy issued its fourth quarter and fiscal year 2001 earnings release, claiming fourth quarter recurring net income of $144 million and annual recurring net income of $713 million.

53.     On April 25, 2002, Dynegy issued its first quarter earnings release, claiming recurring net income of $173 million.

54.     All of the earnings reports publicized through Dynegy's earnings releases were reiterated in the company's SEC filings.

55.     In addition to issuing press releases and reporting to the SEC, Dynegy also promoted its stock to Plan participants through company meetings with company representatives

including Defendant Dreyer, at which the company representatives advised employees to keep investing in Dynegy stock because its price would keep going up.

56.    Also on April 25, 2002, Dynegy disclosed the existence of an SEC investigation into Dynegy's transactions with special purpose entities that Dynegy had code-named "Project Alpha."  "Project Alpha" involved claiming operating cash flow from transactions that were actually financing arrangements with no economic substance.

57.    In reaction, the price of Dynegy stock fell 23%.

58.    On May 8, 2002, Dynegy disclosed that the SEC had commenced a formal investigation into Project Alpha, energy price manipulation by Dynegy in the California market, and the use of "round-trip trades" – simultaneous pre-arranged buy-sell transactions with the same counter-party – to boost operating results.  Dynegy's stock price fell another 9%.

59.    On May 24, 2002, Dynegy announced that it had been served with a subpoena by the United States Attorney's office in Houston, Texas, for documents relating to "Project Alpha" and certain "round-trip trades."  Dynegy disclosed that the documents requested were "similar to those that Dynegy has already provided or is in the process of providing to the SEC, FERC and other government agencies."

60.    On May 28, 2002, Dynegy announced the resignation of its Chairman and CEO, Chuck Watson.  Still, the press release announcing the resignation asserted that Dynegy had "a solid base of assets and strong business fundamentals" and "the best strategy in place to resolve the issues it faces."

61.    On June 19, 2002, Dynegy announced the resignation of Defendant Doty, its Chief Financial Officer and a member of the Plan Committee.

62.    On September 24, 2002, the SEC announced that it had found that Dynegy had engaged in securities fraud in connection with its disclosures and accounting for "Project Alpha" and its use of "round-trip trades."  The SEC announced that it had settled these charges, requiring Dynegy to pay a $3 million fine.  The SEC found that Defendant Doty had "falsely stated to the public that Alpha's 'primary purpose' was to secure a long-term natural gas supply."  The SEC also found that "Dynegy misled investors about the level of its energy trading

1  activity by failing to disclose that the company's publicly released numbers included results

2  inflated by" round-trip trades.

3      63.    On December 19, 2002, Dynegy announced that its subsidiary Dynegy Marketing

4  and Trade had reached a settlement with the Commodity Futures Trading Commission requiring

5  Dynegy to pay a civil monetary penalty of $5 million.  In a press release announcing the

6  settlement, the CFTC reported that its settlement order "finds that Dynegy knowingly submitted

7  false information to the reporting firms in an attempt to skew those indexes for Dynegy's

8  financial benefit."

9      64.    As of December 31, 2002, the value of units in the Plan's Company Stock fund

10  was $.47 per unit.

11      65.    By January 31, 2003, Dynegy had twice restated its earnings, including the

12  following reductions:

13          •    Annual net income for 2000, originally reported as $501 million, was

14              reduced to $494 million;

15          •    Annual net income for 2001, originally reported as $648 million, was

16              reduced to $432 million;

17          •    Net income for first quarter 2002, originally reported as a $140 million

18              loss, was restated to a $405 million loss;

19          •    Net income for second quarter 2002, originally reported as a $328 million

20              loss, was restated to a $398 million loss;

21          •    Net income for third quarter 2002, originally reported as a $1.8 billion

22              loss, was restated to a $1.66 billion loss.

23      66.    As of December 31, 2003, the value of units in the Plan's Company Stock fund

24  was $1.71 per unit.

25      67.    As of June 30, 2004, the value of units in the Plan's Company Stock fund was

26  $1.70 per unit.

27      68.    Plaintiffs are informed and believe, and based thereon allege, that while

28  Defendants continued to allow Plan assets to be invested in Dynegy stock to the detriment of

Plan participants, individual Defendants, including Defendants Dorey, Lang, and Mott, sold substantial personal holdings of Dynegy stock.

### Defendants' Breaches of Fiduciary Duty

69.    Plaintiffs are informed and believe, and based thereon allege, that at all relevant times Defendants, and each of them, knew or should have known that the price of Dynegy stock was artificially inflated and that Dynegy stock constituted an imprudent investment for the Plan.

70.    Plaintiffs are informed and believe, and based thereon allege, that at all relevant times, the Plan's fiduciaries had the duty to review the Plan's investment policies and the selection and performance of investment alternatives offered under the Plan.

71.    Plaintiffs are informed and believe, and based thereon allege, that at all relevant times, as one of its duties in administering the Plan, Illinois Power and/or the Plan Committee Defendants, as the Plan Administrator, had the duty and responsibility to distribute to the Plan's participants information explaining the Plan.

72.    Plaintiffs are informed and believe, and based thereon allege, that as one of their duties as Plan Administrator, Illinois Power and/or the Plan Committee Defendants were required to elicit from Dynegy, as Plan sponsor, information necessary for the proper administration of the Plan.

73.    At all relevant times, a portion of the Plan's assets in Plaintiffs' accounts and all Class members' accounts was invested in one or more Company Stock funds maintained by the Plan, and the Plan purchased and owned Dynegy stock in order to effectuate those investments.

74.    Defendants' representations concerning Dynegy's revenue, cashflow, and earnings and concerning Project Alpha, the round-trip trades, and manipulation of energy prices in the California market were materially false and misleading, and Defendants failed to disclose material information concerning these matters.

74A.    On or about March 9, 2000, Chuck Watson, Chief Executive Officer of Dynegy, sent an e-mail to all Dynegy employees telling them that they would all be receiving a $50 bill to celebrate the fact that Dynegy stock price had recently exceeded $50 per share.  In the e-mail, Watson attributed the rise in Dynegy stock to the hard work of Dynegy's employees, and

called the stock price "an exciting vote of confidence in our company."

74B.    In or around July 2000, Dynegy Human Resources, which was then supervised by Defendant Marian Davenport, e-mailed to all Dynegy employees a newsletter entitled "Pay & Benefits for Dynegy People."  The newsletter stated that a stock split "serves as a strong signal that management and the Board of Directors are very positive on the company's prospects."

74C.    In or around August 2000, Dynegy CEO Watson sent an e-mail to all Dynegy employees informing them that Dynegy's Board of Directors had approved a two-for-one stock split.  In the announcement, Watson stated that a stock split "can contribute to an increase and broadening of Dynegy's shareholder base due to the smaller share price.  It also serves as a strong signal that management and the Board of Directors are very positive on the Company's prospects.  We believe that these factors will contribute to continued and superior share value appreciation in the future."

74D.    In or around September 2000, Watson sent an e-mail to all Dynegy employees telling them that they would all be receiving two $50 bills with their next paychecks to celebrate Dynegy stock's return to $50 per share after the stock split.

74E.    In or around April 2002, after the Wall Street Journal published its article exposing the existence of Project Alpha, Watson sent an e-mail to all Dynegy employees characterizing the article as "unfairly negative," blaming a disgruntled former employee for the story, stating that "Dynegy has not executed any questionable transactions and has been in the past and remains committed to clear and open financial reporting," and stating that "[t]oday's story will be forgotten tomorrow."

74F.    In or around April 2002, Dynegy Corporate Communications e-mailed to all Dynegy employees a press release stating that Dynegy had reported a recurring net income of $173 million and recurring earnings per diluted share of $.41 in the first quarter of 2002. Watson was quoted in the press release as attributing the "sustained and repeatable earnings" to Dynegy's business plan and performance.

74G.    In or around April 2002, Watson sent a message to Dynegy employees that commented on the press release announcing Dynegy's first quarter 2002 report.  Watson stated

1    that pursuant to the SEC investigation, Dynegy would file an amended 2001 report

2    characterizing the cash flow stemming from Project Alpha as a financing transaction.  He

3    further stated that Dynegy's core business plan continued to be solid, and that Dynegy had the

4    proven ability to perform well under all conditions.

5                                    **CLASS ACTION ALLEGATIONS**

6           75.     Plaintiffs bring the Claims for Relief contained herein on behalf of themselves

7    and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on

8    behalf of all members of a Class, defined as follows:

9                   All Participants in the Plan for whose individual accounts the Plan held shares of

10                  Dynegy stock at any time from February 1, 2000 to the present.  Excluded from

11                  the Class are the individual defendants, officers and directors of the corporate

12                  defendants, members of their immediate families, and the heirs, successors or

13                  assigns of any of the foregoing.

14          76.     The requirements for maintaining this action as a class action under F.R.Civ.P.

15   23(a), (b)(1), and (b)(2) are satisfied in that:

16                  a.      The members of the Class are so numerous that joinder of all members is

17                          impracticable.  Although the exact number of Class members is unknown

18                          to Plaintiffs at this time and can only be ascertained through appropriate

19                          discovery, Plaintiffs are informed and believe that there were, during the

20                          relevant time period, more than 1000 participants in the Plan, a

21                          substantial number of whom had some or all of their account balances in

22                          the Plan invested in one or more Dynegy stock funds maintained by the

23                          Plan.

24                  b.      There are questions of law and fact common to the Class, including the

25                          following:  whether Defendants were fiduciaries of the Plan during the

26                          relevant time period; whether Defendants breached the fiduciary duties

27                          they owed to members of the Class by imprudently maintaining one or

28                          more Dynegy stock funds as investment options under the Plan; whether

1  Defendants breached the fiduciary duties they owed to members of the

2  Class by, *inter alia*, imprudently allowing and/or directing the Plan to

3  purchase and hold Dynegy stock; whether the Plan and the Class

4  members were injured by such breaches; whether Defendants must make

5  the Plan whole for its losses pursuant to ERISA § 409, 29 U.S.C. § 1109;

6  and whether such losses should be allocated to Class members' individual

7  Plan accounts.

8  c.  Plaintiffs are members of the Class and their claims are typical of the

9  claims of the members of the Class, as Plaintiffs and all members of the

10  Class sustained injury arising out of Defendants' wrongful conduct in

11  breaching their fiduciary duties and violating ERISA as complained of

12  herein.

13  d.  Plaintiffs will fairly and adequately protect the interests of the members

14  of the Class.  Plaintiffs have no interests antagonistic to or in conflict

15  with those of the other Class members.  Plaintiffs are represented by

16  attorneys who specialize in ERISA and class action litigation.

17  e.  Prosecution of separate actions by members of the Class would create a

18  risk of inconsistent adjudications with respect to individual members of

19  the Class which would establish incompatible standards of conduct for

20  Defendants.  Alternatively, adjudications with respect to individual

21  members of the Class would, as a practical matter, be dispositive of the

22  interests of the other members not parties to the adjudications, or

23  substantially impair or impede their ability to protect their interests,

24  particularly in light of the fact that Plaintiffs seek to obtain relief on

25  behalf of the Plan as a whole.

26  f.  Defendants have acted and/or failed to act on grounds generally

27  applicable to the Class, thereby making appropriate monetary relief, final

28  injunctive and other equitable relief with respect to the Class as a whole.

# FIRST CLAIM FOR RELIEF

### Claim for Breach of Fiduciary Duty Against All Defendants
### – Imprudent Investment of Plan Assets
### [ERISA §§ 404(a)(1), 409, 502(a)(2), 29 U.S.C. §§ 1104(a)(1), 1109, 1132(a)(2)]

77.    Plaintiffs incorporate Paragraphs 1 through 76 above, as though fully set forth herein.

78.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia,* that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and to diversify the plan's investments so as to minimize the possibility of large losses.

79.    Defendants' selection, monitoring, and continuation of the investment alternatives under the Plan were subject to the above-described fiduciary duties.  By their acts and omissions in continuing Plan investment in Dynegy stock and/or in continuing Dynegy stock funds as investment alternatives under the Plan, Defendants, and each of them, breached each of these fiduciary duties.

80.    Each of the Defendants was also a co-fiduciary liable for the breaches committed by each other fiduciary under ERISA § 405, 29 U.S.C. § 1105, because each (a) knowingly participated in, or knowingly undertook to conceal, an act or omission of one or more other fiduciaries, knowing such act or omission was a breach; (b) enabled one or more other fiduciaries to commit a fiduciary breach by failing to comply with his, her, or its own fiduciary duties in the administration of the specific responsibilities giving rise to status as a fiduciary; and/or (c) knew of a breach by one or more other fiduciaries but failed to make reasonable efforts under the circumstances to remedy the breach.

81.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any

losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets.  ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate, including removal of the fiduciary.

82.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

83.    As a consequence of Defendants' breaches of fiduciary duty, the Plan suffered losses.

## SECOND CLAIM FOR RELIEF

### Claim for Breach of Fiduciary Duty Against All Defendants – Fiduciary Misrepresentations
**[ERISA §§ 404(a)(1), 409, and 502(a)(2), 29 U.S.C. §§ 1104(a)(1), 1109, and 502(a)(2)]**

84.    Plaintiffs incorporate Paragraphs 1 through 83, above, as though fully set forth herein.

85.    By making false, misleading, incomplete, and inaccurate disclosures and representations to the Plan's participants, Defendants, and each of them, breached their fiduciary duties to act solely in the interests of the participants and to act prudently.

86.    Plaintiffs and the Class members relied upon and/or and are presumed to have relied upon Defendants' representations and nondisclosures by directing that the Plan purchase Dynegy stock and/or by not directing that the Plan sell Dynegy stock, which reliance was to the detriment of Plaintiffs, the Class members, and the Plan because the Plan purchased and/or held Dynegy stock and incurred losses on those investments, which losses resulted in reductions in the value of the Plan accounts of Plaintiffs and the Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

A.    Certify this action as a class action pursuant to F.R.Civ.P.23;

B.    Declare that the Defendants, and each of them, have breached their ERISA fiduciary duties to the Plan's participants and beneficiaries;

C.    Issue an order compelling the Defendants, and each of them, to make good to the

Plan all losses to the Plan resulting from these breaches, including lost return on investments that would have resulted from prudent and diversified investment of the Plan's assets;

D.     Award such other equitable or remedial relief as may be appropriate, including the permanent removal of the Defendants from any positions of trust with respect to the Plan and the appointment of independent fiduciaries to administer the Plan;

E.     Enjoin Defendants, and each of them, from any further violations of their ERISA fiduciary responsibilities, obligations,  and duties;

F.     Order Defendants or their successor fiduciaries to allocate the Plan's recoveries to the accounts of all Plan participants who had any portion of their account balances invested in any Dynegy stock fund maintained by the Plan in proportion to the accounts' losses attributable to the decline in Dynegy stock prices;

G.     Award Plaintiffs their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

H.     Award such other and further relief as the Court deems equitable and just.


Dated: March 10, 2006                    Respectfully submitted,

                                         LEWIS, FEINBERG,
                                         RENAKER & JACKSON, P.C.


                                By:      /s/ Jeffrey Lewis
                                         Jeffrey Lewis
                                         Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2006, I electronically filed Plaintiffs' First Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filings to the following:

James I. Singer          jis@schuchatcw.com
Teresa S. Renaker        trenaker@lewisfeinberg.com
Mathew B. Leppert        mbl@schuchatcw.com
Margo Hasselman          mhasselman@lewisfeinberg.com

**Attorneys for Plaintiffs,**

Morgan D. Hodgson        mhodgson@steptoe.com
Charles L. Joley         cjoley@ilmoattorneys.com
Marc E. Levin            mlevin@steptoe.com
Paul J. Ondrasik         msherman@steptoe.com

**Attorneys for Attorney for Defendants Dynegy, Inc., Dynegy Midwest Generation, Inc., Louis Dorey, Marian Davenport, Alec Dreyer, John Ford, Andrea Lang, Tom Linton, Lisa Metts, Milton Scott, and R. Blake Young**,

Heather Lea              hhlea@bryancave.com
Jeffrey S. Russell       jsrussell@bryancave.com

**Attorneys for Defendant Illinois Power Company,**

Russell K. Scott         rks@greensfelder.com
Michael M. Wilson        mwilson@wfllp.com
David K. Bissinger       dbissinger@wfllp.com

**Attorneys for Robert D. Doty**

Respectfully submitted,

 /s/ Jeffrey Lewis
Jeffrey Lewis
LEWIS, FEINBERG, RENAKER
  & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612-2509
(510) 839-6824
jlewis@lewisfeinberg.com