## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DENNIS LIVELY, WILLIS HARMS,** ) <br> **and LARRY GRAB,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **vs.** ) <br> ) <br> **DYNEGY, INC., ILLINOIS POWER** ) <br> **COMPANY, DYNEGY MIDWEST** ) <br> **GENERATION, INC., DYNEGY INC.** ) <br> **BENEFIT PLANS COMMITTEE,** ) <br> **LOUIS DOREY, ROBERT D. DOTY,** ) <br> **MARIAN M. DAVENPORT, ALEC G.** ) <br> **DREYER, JOHN FORD, ANDREA** ) <br> **LANG, TOM LINTON, LISA Q.** ) <br> **METTS, MICHAEL MOTT, MILTON** ) <br> **L. SCOTT, R. BLAKE YOUNG,** ) <br> **LARRY ALTENBAUMER,** ) <br> **NICHOLAS CARUSO, CRISTIN** ) <br> **CRACRAFT, MELESSA FOX, and** ) <br> **PRYOR LINDSEY,** ) <br> ) <br> **Defendants.** ) | **Case No. 05-cv-00063-MJR** |

### MEMORANDUM and ORDER

**REAGAN, District Judge:**

This matter comes before the Court on Plaintiffs' Motion for Class Certification (Doc. 71) and Plaintiffs' Motion to Clarify June 16, 2006 Order (Doc. 142). The motion for clarification is **DENIED as moot** in light of the Court's statements on the record at the hearing on Plaintiffs' motion for class certification. The motion for class certification is **GRANTED in part and DENIED in part.** Plaintiffs' request for class certification of their First Claim for Relief as set forth in Plaintiffs' operative Complaint in this cause, *see* **Doc. 117 ¶¶ 77-83**, (hereinafter, "Count I") is **GRANTED**, and Count I is certified as a class action pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure. Plaintiffs' request for class certification as to their Second Claim for

Relief (hereinafter, "Count II"), *see* **Doc. 117 ¶¶ 84-86**, is **DENIED**.

## INTRODUCTION

Plaintiffs Dennis Lively, Willis Harms, and Larry Grab bring this action against Defendants Dynegy, Inc. ("Dynegy"), Illinois Power Company ("IPCO"), Dynegy Midwest Generation, Inc., Dynegy Inc. Benefit Plans Committee ("Dynegy BPC"), Louis Dorey, Robert D. Doty, Marian M. Davenport, Alec G. Dreyer, John Ford, Andrea Lang, Tom Linton, Lisa Q. Metts, Michael Mott, Milton L. Scott, R. Blake Young, Larry Altenbaumer, Nicholas Caruso, Cristin Cracraft, Melessa Fox, and Pryor Lindsey pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), on behalf of a proposed class of participants in the "Illinois Power Company Incentive Savings Plan for Employees Covered Under a Collective Bargaining Agreement" ("the Plan").  Plaintiffs allege breach of fiduciary duty pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), and ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and seek to remedy the Plan's losses on its investments in Dynegy stock during the period from February 1, 2000, through the present.

Plaintiffs allege that they are employees of Dynegy and its predecessor entities and participants in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).  *See* **Doc. 117 ¶¶ 6-8**.  Plaintiffs allege also that the Plan is an individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), and an employee pension benefit plan and an employee benefit plan for purposes of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  *See* **Doc. 117 ¶¶ 25-26**.[1]

---

1.    Additionally, the Plan is an eligible independent account plan ("EIAP"), which means that it is an individual account plan which is also a profit sharing, stock bonus, thrift, or savings plan.  *See* **29 U.S.C. § 1107(d)(3)(A); Doc. 74 at 22**.  An EIAP is exempt from general ERISA restrictions on plans acquiring or holding employer securities.  *See* **29 U.S.C. § 1104(a)(1)(C), (a)(2)**.

Thus, the Plan is subject to ERISA's requirements regarding fiduciary duties. ***See Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811 (7th Cir. 1994); *James v. National Bus. Sys., Inc.*, 924 F.2d 718, 720 (7th Cir. 1991)**.

Under ERISA § 404, 29 U.S.C. § 1104, a fiduciary of an employee benefit plan must carry out its responsibilities "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." **29 U.S.C. § 1104(a)(1)(B)**. ERISA § 409, 29 U.S.C. § 1109, provides, in pertinent part, "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." **29 U.S.C. § 1109(a)**. Finally, ERISA § 502, 29 U.S.C. § 1132, states, in part, "A civil action may be brought – (2) by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." **29 U.S.C. § 1132(a)(2)**.[2]

---

2.   In defining who is a fiduciary, ERISA recognizes a distinction between named fiduciaries and functional fiduciaries.  ERISA requires every employee benefit plan to be established and maintained pursuant to a written instrument that provides for one or more "named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." **29 U.S.C. § 1102(a)(1)**.  "[T]he term 'named fiduciary' means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." **29 U.S.C. § 1102(a)(2)**.  Persons or entities who are not named as fiduciaries in plan documents but who exercise discretionary authority and control that amounts to actual decision-making power are nonetheless fiduciaries with respect to a plan:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its

Actions for a fiduciary breach under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2), must "be brought in a representative capacity on behalf of the plan as a whole." **Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985) (finding that an action was proper under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), where all of the plaintiffs shared "[a] common interest . . . in the financial integrity of the plan")**.  **See also Steinman v. Hicks, 352 F.3d 1101, 1102 (7th Cir. 2003) (a claim of breach of fiduciary duty for failure to diversify plan assets was properly brought on behalf of a plan); Meade v. Pension Appeals & Review Comm., 966 F.2d 190, 194 (6th Cir. 1992) ("[R]ecovery for a violation of fiduciary duty under 29 U.S.C. § 1109 inures to the benefit of the plan."); Boeckman v. A.G. Edwards, Inc., 461 F. Supp. 2d 801, 807 (S.D. Ill. 2006) (quoting Filipowicz v. American Stores Benefit Plans Comm., 56 F.3d 807, 812 (7th Cir. 1995)) ("Liability for a breach of fiduciary duty runs to the plan and not beneficiaries as individuals.")**.  The Court already has found that this action is properly brought on behalf of the Plan, **see Lively v. Dynegy, Inc., 420 F. Supp. 2d 949, 953 (S.D. Ill. 2006)**, and that decision is the law of the case, from which the Court sees no sound reason to depart.  **See Trustees of Pension, Welfare, & Vacation Fringe Benefit Funds of IBEW Local 701 v. Pyramid Elec., 223 F.3d 459, 468 n.4 (7th Cir. 2000); Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1227 (7th Cir. 1995); Dudley v. Putnam Inv. Funds, Civil No. 06-940-GPM, 2007 WL 329129, at *4 (S.D. Ill. Feb. 1, 2007)**.

---

assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any discretionary authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

**29 U.S.C. § 1002(21)(A)**.

Page 4

Pertinent to this case are the "Illinois Power Company Incentive Savings Plan for Employees Covered Under a Collective Bargaining Agreement (As Amended and Restated Effective January 1, 1991 and as further amended through June 1997)," *see* **Doc. 22, Appendix of Plan Documents in Support of Defendants' Motion to Dismiss ("Appendix"), Tab A**, and the "Illinois Power Company Incentive Savings Plan for Employees Covered Under a Collective Bargaining Agreement As Amended and Restated Effective January 1, 2002." *See id.*, **Appendix, Tab B**. Dynegy is the successor-in-interest to IPCO, which was the administrator and named fiduciary of the Plan until February 2000. *See* **Doc. 22, Appendix, Tab A at ¶ 11.1, ¶ 1.8, ¶ 1.34 and "Adoption of and Amendment to Illinois Power Company Incentive Savings Plan for Employees Covered under a Collective Bargaining Agreement."** After the merger of Dynegy and IPCO, Dynegy BPC assumed the role of administrator and named fiduciary of the Plan in July 2000. *See* **Doc. 22, Appendix, Tab B at ¶ 12.1, ¶ 1.1(9); *id.*, Appendix, Tab C**. Louis Dorey, Robert D. Doty, Marian M. Davenport, Alec G. Dreyer, John Ford, Andrea Lang, Tom Linton, Lisa Q. Metts, Michael Mott, Milton L. Scott, R. Blake Young, Larry Altenbaumer, Nicholas Caruso, Cristin Cracraft, Melessa Fox, and Pryor Lindsey are current and former members of the Dynegy BPC. *See* **Doc. 117 ¶¶ 13-24**. Plaintiffs allege that all Defendants are fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). *See* **Doc. 117 ¶¶ 9-24**.

At all times relevant to this case, participants in the Plan, subject to Internal Revenue Service ("IRS") limitations, have been allowed to contribute tax-deferred payroll deductions to the Plan. *See* **Doc. 22, Appendix, Tab A at ¶¶ 3.1-3.6; *id.*, Appendix, Tab B at ¶¶ 3.1-3.2. *See also* Doc. 74 at 3, 5-6**. Participants are able under the Plan to designate the manner in which amounts allocated to their accounts will be invested in various investment funds. *See* **Doc. 22, Appendix,**

**Tab A at ¶¶ 14.1-14.6;** *id.,* **Appendix, Tab B at ¶¶ 5.3-5.4.** *See also* **Doc. 74 at 6**.  Under the Plan, participants are entitled to designate a portion of their accounts for investment in employer stock. *See* **Doc. 22, Appendix, Tab A at ¶ 14.3, ¶ 1.15A, ¶ 1.9;** *id.,* **Appendix, Tab B at ¶¶ 5.3-5.5, ¶ 1.1(11).** *See also* **Doc. 74 at 6, 23, 24**.[3]

The Plan allows Dynegy to make voluntary employer matching contributions as well as employer discretionary contributions and specifies that both shall be in Dynegy common stock valued at the closing price of such stock on the New York Stock Exchange for the last day of the month for which the contribution is made.  *See* **Doc. 117 ¶¶ 29-30**; **Doc. 22, Appendix, Tab B at ¶¶ 3.3-3.4**.  Before January 1, 2002, Plan participants generally were not permitted to convert any employer discretionary contributions in the form of employer stock to any other investment fund. *See* **Doc. 22, Appendix, Tab A at ¶ 14.4 and "Amendment to Illinois Power Company Incentive Savings Plan for Employees Covered under a Collective Bargaining Agreement" VI(6)**.  Effective January 1, 2002, participants were permitted to convert the investment designation of such employer contributions to other investment funds without limitation. *See* **Doc. 22, Appendix, Tab B at ¶ 6.8(b), ¶ 5.3(b)-(c)**.

Beginning in 2002, Dynegy suffered a severe financial setback when it announced that it was under investigation by the Securities and Exchange Commission ("SEC") for accounting improprieties that had led to the overvaluation of Dynegy stock.  *See* **Doc. 117 ¶ 56**.  Ultimately, the improprieties at issue forced Dynegy to pay a $3 million fine to the SEC and $5 million civil

---

3.    Until February 2000, employer stock for purposes of the Plan was stock of Illinova Corporation, the parent company of IPCO; after February 2000, employer stock for Plan purposes was stock of Dynegy.  *See* **Doc. 117 ¶ 27**.  *See also* **Doc. 22, Appendix, Tab A at ¶ 14.1, ¶ 1.15A, ¶ 1.9;** *id.,* **Appendix, Tab B at ¶ 5.3, ¶ 1.1(11), ¶ 1.1(10).**

penalty to the Commodity Futures Trading Commission and to restate the company's earnings repeatedly.  *See id*. **¶ 62, ¶ 63, ¶ 65**.  Plaintiffs allege that the price of Dynegy's stock rose from $16.71 per unit on December 31, 1999, to $54.08 per unit on December 31, 2000, only to fall to $.47 per unit as of December 31, 2002.  *See id*. **¶ 36, ¶ 44, ¶ 64**.  Plaintiffs allege that during this period, Defendants made numerous statements in press releases, SEC filings, and meetings with Plan participants encouraging investment in Dynegy stock. *See, e.g., id*. **¶ 39, ¶ 41, ¶ 43, ¶ 49, ¶ 54, ¶ 55**.

Plaintiffs' operative complaint in this cause alleges that Defendants breached their fiduciary duties under ERISA in two ways.  Count I of Plaintiffs' operative complaint alleges that Defendants "knew or should have known that the price of Dynegy stock was artificially inflated and that Dynegy stock constituted an imprudent investment for the Plan," **Doc. 117 ¶ 69**, yet they failed to discontinue Plan investment in Dynegy stock and to discontinue offering the company stock funds as investment alternatives for participants. *See id*. **¶ 79**.  Count II of Plaintiffs' operative complaint alleges that Defendants' representations concerning Dynegy's performance and certain accounting and reporting improprieties were false and misleading, and Defendants failed to disclose material information regarding these matters.  *See id*. **¶¶ 74, 85**.  Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), and ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Plaintiffs seek relief including an order compelling Defendants to make good to the Plan all losses resulting from the alleged fiduciary breaches and an order that the Plan's fiduciaries allocate the restored losses to the accounts of Plan participants in proportion to the accounts' losses attributable to the decline in Dynegy's stock price.  Pursuant to Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following class:

> All Participants in the Plan for whose individual accounts the Plan held shares of Dynegy stock at any time from February 1, 2000 to the present. Excluded from the Class are the individual defendants, officers and directors of the corporate defendants, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

**Doc. 117 ¶ 75**.  Having reviewed carefully the submissions of the parties concerning Plaintiffs' request for class certification, and having conducted a hearing on the issue of class certification, the Court now is prepared to rule.

### DISCUSSION

**A.     Plaintiffs' Motion to Clarify June 16, 2006 Order**

By order entered February 15, 2006, the Court held that the allegations of Count II of Plaintiffs' original complaint in this cause sounded in misrepresentation and were not adequately pleaded under Rule 9(b) of the Federal Rules of Civil Procedure.  *See Lively***, 420 F. Supp. 2d at 955**.  By order entered June 16, 2006, the Court held that amendment of those allegations by Plaintiffs nonetheless failed to cure the lack of particularity under Rule 9(b).  At the hearing on Plaintiffs' motion for class certification the Court explained that the June 16 order only dismissed Count II of the operative complaint in this cause to the extent Count II asserts a claim based on affirmative misrepresentations by Defendants, rather than omissions.  *See Rogers v. Baxter Int'l, Inc.***, 417 F. Supp. 2d 974, 984-85 (N.D. Ill. 2006);** *Howell v. Motorola, Inc.***, 337 F. Supp. 2d 1079, 1089 (N.D. Ill. 2004);** *Adamczyk v. Lever Bros. Co., Div. of Conopco***, 991 F. Supp. 931, 939 (N.D. Ill. 1997)**.  In light of the Court's clarification of the June 16 order at the class certification hearing, Plaintiffs' motion for clarification is moot and therefore will be denied.[4]

---

4.     As is discussed infra, the Court concludes that the portion of Count II of Plaintiffs' operative complaint based on alleged omissions by Defendants is unsuitable for class certification.

**B.      Plaintiffs' Motion for Class Certification**

**1.      Standard Governing Class Certification**

Rule 23 of the Federal Rules of Civil Procedure sets forth the prerequisites for a class action:  (1) a proposed class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be a question of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy").  *See* **Fed. R. Civ. P. 23(a)**.  In addition to satisfying these four elements, a party seeking class certification must also demonstrate that the action falls within one of the categories enumerated in Rule 23(b).  *See* **Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3)**.  *See also* ***Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 306 (N.D. Ill. 1995); *Jefferson v. Security Pac. Fin. Servs., Inc.*, 161 F.R.D. 63, 67 (N.D. Ill. 1995)**.

A party seeking class certification bears the burden of proving that each of the requirements under Rule 23 has been met, and a failure by the movant to satisfy any one of the prerequisite elements precludes certification.  *See* ***General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160-61 (1982); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993)**.  "The court maintains broad discretion to determine whether a proposed class satisfies the requirements and should err in favor of maintaining class actions."  ***Guillory v. American Tobacco Co.*, No. 97 C 8641, 2001 WL 290603, at *2 (N.D. Ill. Mar. 20, 2001).  *See also First Interstate Bank of Nev., N.A. v. Chapman & Cutler*, 837 F.2d 775, 781 (7th Cir. 1988); *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980); *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975)**.

In evaluating a request for class certification, a court must not weigh the merits of a case, *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981), although the court must "understand the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of certification issues." *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 530 (N.D. Ill. 1998). *See also Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *10 (N.D. Ill. Oct. 19, 2001) (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)) (explaining that, in evaluating a request for class certification, a court must make a "preliminary inquiry . . . that has at its focus not the substantive strength or weakness of the plaintiffs' claims but rather the merits of those allegations that bear on the suitability of a case for class treatment under Rule 23(a) and (b).").  Even where the elements of class certification are not in dispute, a court has a duty to evaluate independently the proposed class to ensure its compliance with the requirements of Rule 23.  *See Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003); *Boeckman v. A.G. Edwards, Inc.*, No. Civ.05 658 GPM, 2006 WL 4043782, at *1 (S.D. Ill. Oct. 13, 2006).

### 2.    Propriety of the Proposed Class Definition

As an initial matter, the Court addresses Defendants' objections to the proposed class definition, namely, that the proposed class should not include persons who have already taken a full distribution of their benefits under the Plan and who have no expectation of returning to covered employment, and that the proposed class period should run only until the date Defendants made disclosures that corrected any alleged inflation of the value of Dynegy stock.  The Court agrees with Defendants and the weight of authority from sister courts that former participants in the Plan do not

have standing to sue under ERISA and therefore may not be included in the proposed class in this case. *See, e.g., In re Mutual Funds Inv. Litig.*, MDL-15863, 2006 WL 2381056, at *1 (D. Md. Aug. 15, 2006); *Graden v. Conexant Sys., Inc.*, No. Civ. 05-0695, 2006 WL 1098233, at **2-5 (D.N.J. Mar. 31, 2006); *In re RCN Litig.*, No. 04-5068(SRC), 2006 WL 753149, at *14 (D.N.J. Mar. 21, 2006); *Holtzscher v. Dynegy, Inc.*, No. Civ.A. H-05-3293, 2006 WL 626402, at *4 (S.D. Tex. Mar. 13, 2006); *Lalonde v. Textron, Inc.*, 418 F. Supp. 2d 16, 21-22 (D.R.I. 2006); *In re Admin. Comm. Erisa Litig.*, No. C03-3302 PJF, 2005 WL 3454126, at **5-6 (N.D. Cal. Dec. 16, 2005); *Hargrave v. TXU Corp.*, 392 F. Supp. 2d 785, 789-90 (N.D. Tex. 2005). *See also Boeckman*, 461 F. Supp. 2d at 809-10. Accordingly, the Court will redraft Plaintiffs' proposed class definition so that the term "participants" for purposes of that definition is understood to exclude persons who have taken a full distribution of their benefits under the Plan and who thus have no colorable claim to vested benefits under the Plan.

Concerning Defendants' other objection to the proposed class definition, the Court does not agree that the proposed class period is "open-ended" and that it must run only to the date Defendants made curative disclosures with respect to the value of Dynegy stock. While it is the case that in class actions under the federal securities laws alleging misrepresentation as to the value of shares the class period generally is determined by the time when curative information is publicly announced or otherwise effectively disseminated, *see, e.g., In re Sunrise Sec. Litig.*, MDL No. 655, 1987 WL 19343, at **1-2 (E.D. Pa. July 7, 1987), this case is brought under ERISA, of course, not the securities laws. *See In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 914-15 (E.D. Mich. 2004) (rejecting defendants' attempts to import rules derived from securities law into ERISA fiduciary litigation); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d

Page 11

1165, 1181-82 (D. Minn. 2004) (same); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 565-66 (S.D. Tex. 2003) (the duties imposed by federal securities laws do not, absent express congressional intent, prevent the imposition of additional duties under ERISA); *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 767 (S.D.N.Y. 2003) (same). ERISA imposes on plan fiduciaries a duty to use prudence "in investigating, evaluating and making [a plan] investment," as well as a "duty to monitor performance [of the investment] with reasonable diligence and to withdraw the investment if it bec[omes] clear or should have become clear that the investment was no longer proper for the Plan." *Boeckman*, 461 F. Supp. 2d at 814. Accordingly, the proper termination date of the proposed class period is the date when Dynegy stock ceased to be, as Plaintiffs allege, an imprudent investment for the Plan. In sum, while the Court finds that former participants in the Plan may not be included in the proposed class, the Court concludes that the class definition proposed by Plaintiffs is properly drawn.

### 3.      Rule 23(a) Requirements

#### a.      Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." **Fed. R. Civ. P. 23(a)(1)**. "A class of more than 40 individuals raises a presumption that joinder is impracticable." *Carrier v. JPB Enters., Inc.*, 206 F.R.D. 332, 334 (D. Me. 2002). *See also Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, . . . generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.")**. Correspondingly, courts have found the numerosity element satisfied where the putative class would number in the range of as few as ten to forty class members. *See, e.g., Swanson v. American Consumer Indus.,*

*Inc.*, 415 F.2d 1326, 1333 & n.9 (7th Cir. 1969) (forty class members satisfied numerosity); *Hendricks-Robinson v. Excel Corp.*, 164 F.R.D. 667, 671 (C.D. Ill. 1996) (thirty-eight class members satisfied numerosity); *Riordon v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (certifying a class of twenty-nine members, and noting that courts have certified classes of as few as ten members).

        In this instance, the parties do not dispute that the requirement of numerosity is satisfied.  In making the numerosity determination, a court "may make common sense assumptions in order to find support for numerosity." *Cannon v. Nationwide Acceptance Corp.*, No. 96 C 1136, 1997 WL 139472, at *2 (N.D. Ill. Mar. 25, 1997).  *See also Keele v. Wexler*, No. 95 C 3483, 1996 WL 124452, at *3 (N.D. Ill. Mar. 19, 1996); *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D. Ill. 1988).  "[A]lthough the one who asserts the class must show some evidence or reasonable estimate of the number of class members, if a plaintiff cannot provide precise numbers, a good faith estimate is sufficient to satisfy the numerosity requirement where it is difficult to assess the exact  class membership." *Miller v. Spring Valley Props.*, 202 F.R.D. 244, 247 (C.D. Ill. 2001) (quoting *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 329 (N.D. Ill. 1995)).  Plaintiffs have submitted to the Court the Plan's IRS Form 5500 filings from 2000 through 2003, which show that the Plan had more than 2300 participants in each year. *See* Doc. 75.  As Plaintiffs point out, it is reasonable to assume that most if not all participants in a given Plan year are within the scope of the proposed class, given the Plan's provisions for automatic investment of employer matching contributions and employer discretionary contributions in employer stock.  Even accounting for exclusion from the proposed class of persons who have taken a full distribution of their benefits under the Plan, it is clear that the requirement of numerosity is satisfied. *See Lemke v. Suntec*

*Indus., Inc.*, No. 94 C 50006, 1997 WL 760507, at *2 (N.D. Ill. Dec. 1, 1997) (in evaluating an ERISA claim for breach of plan terms, holding that twenty-two to thirty-five potential class members satisfied numerosity); *Montgomery v. Aetna Plywood, Inc.*, No. 95 C 3193, 1996 WL 189347, at *4 (N.D. Ill. Apr. 16, 1996) (one hundred class members asserting ERISA claims involving an employee stock ownership plan satisfied numerosity). *See also Feret v. Corestates Fin. Corp.*, No. CIV. A. 97-6759, 1998 WL 512933, at *6 (E.D. Pa. Aug. 18, 1998) (in an ERISA class action, certifying a main class of 210 to 225 people, as well as smaller subclasses).

### b.      Commonality

Under Rule 23(a)(2), "questions of law or fact common to the class" must exist before a class may be certified. **Fed. R. Civ. P. 23(a)(2)**. "[T]he commonality requirement has been characterized as a 'low hurdle' [that is] easily surmounted," *Gaspar v. Linvatec Corp.*, **167 F.R.D. 51, 57 (N.D. Ill. 1996) (quoting *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992))**, because, to satisfy commonality, a plaintiff need only show that there is "at least one question of law or fact common to the class." *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, **164 F.R.D. 659, 663 (N.D. Ill. 1996)**. *See also Blihovde v. St. Croix County, Wis.*, **219 F.R.D. 607, 616 (W.D. Wis. 2003) (calling commonality "a permissive standard" because "a single common issue is sufficient to satisfy this requirement.")**. Generally commonality is satisfied as long as there is "[a] common nucleus of operative fact" as to the class members' claims. *Rosario v. Livaditis*, **963 F.2d 1013, 1018 (7th Cir. 1992)**. *See also In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, **Civil No. MDL-03-1562-GPM, 2007 WL 522300, at *6 (S.D. Ill. Feb. 16, 2007)**; *Allen v. City of Chicago*, **828 F. Supp. 543, 551 (N.D. Ill. 1993)**.

Plaintiffs have identified the following common questions of law or fact presented by their claims:  whether Defendants were fiduciaries of the Plan during the class period; whether Defendants breached the fiduciary duties they owed to Plan participants by imprudently maintaining one or more Dynegy stock funds as investment options under the Plan; whether Defendants breached the fiduciary duties they owed to Plan participants by imprudently allowing and/or directing the Plan to purchase and hold Dynegy stock; whether the Plan and its participants were injured by such breaches; whether Defendants must make the Plan whole for its losses pursuant to ERISA § 409, 29 U.S.C. § 1109; and whether such losses should be allocated to Plan participants' individual Plan accounts.  *See* **Doc. 117 ¶ 76(b)**.  The Court agrees that this case presents shared issues of law and fact arising out of a common nucleus of operative fact such as to satisfy the commonality requirement. ***See In re Enron Corp.*, No. MDL 1446, Civ.A. H-01-3913, 2006 WL 1662596, at \*9 (S.D. Tex. June 7, 2006) (in an ERISA class action for breach of fiduciary duty, finding commonality satisfied by the following common questions:  "whether Defendants were fiduciaries within the meaning of ERISA; whether ERISA was violated by the . . . Defendants' alleged acts and omissions; whether Defendants breached fiduciary duties owed to the class by failing to act prudently and solely in the interest of the class and the plans . . . ; and whether the Plans were damaged by the alleged breaches of fiduciary duty."); *Rogers v. Baxter Int'l Inc.*, No. 04 C 6476, 2006 WL 794734, at \*3 (N.D. Ill. Mar. 22, 2006) (in a proposed class action under ERISA for breach of fiduciary duty, finding commonality satisfied by the following common questions:  "(1) whether defendants were plan fiduciaries; (2) whether the defendants breached one or more fiduciary duties by continuing to offer the Baxter Common Stock Fund as a Plan investment option when they knew or should have known that the stock was**

overvalued; and (3) whether the alleged breaches of fiduciary duty resulted in damage to the Plan."); *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 421-22 (N.D. Okla. 2005) (in a proposed class action under ERISA for breach of fiduciary duty, finding commonality satisfied by the following common questions: "whether Defendants acted as fiduciaries; what duties, if any, were violated by Defendants with respect to the Plan; and whether Defendants improperly withheld information from Plan participants.").

Although Defendants argue that the commonality threshold is not satisfied because resolution of the claims in this case requires inquiry into the individual investment decisions of Plan participants, the Court disagrees.  "[T]he appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs."  *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 465 (E.D. Pa. 2000).  Put another way, "[t]he 'prudent person' standard articulated in [29 U.S.C.] § 1104(a)(1)(B) is objective, focusing on the fiduciary's conduct preceding or at the time of the challenged conduct."  *Harley v. Minnesota Mining & Mfg. Co.*, 42 F. Supp. 2d 898, 906 (D. Minn. 1999).  The "test of prudence focuses on the trustee's conduct in investigating, evaluating and making the investment," and "[o]nce the investment is made, a fiduciary has an ongoing duty to monitor investments with reasonable diligence and remove plan assets from an investment that is improper."  *Id.* (quoting *Whitfield v. Cohen*, 682 F. Supp. 188, 194 (S.D.N.Y. 1988)).  In sum, issues of individual investment behavior by Plan participants do not defeat commonality in this case, as they have no bearing on the question of whether Defendants satisfied their duty of prudence.  *See DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006) (in a proposed class action under ERISA for breach of fiduciary duty, holding that issues of individual investment behavior did not defeat commonality:  "[I]ndividual issues of loss causation do not

**predominate, indeed are not relevant, unless and until it becomes necessary to allocate any Plan recovery to participants.")**; *In re ADC Telecomms. ERISA Litig.*, **No. Civ. 03-2989ADMFLN, 2005 WL 2250782, at \*4 (D. Minn. Sept. 15, 2005) ("The focus of ERISA breach of fiduciary duty litigation is generally on the actions of the defendant, even when misrepresentations are alleged, [so that] individual inquiry into each of the plaintiffs is unnecessary."); *In re Williams Cos. ERISA Litig.*, 231 F.R.D. at 422 (rejecting the argument that issues of individual investment behavior defeated commonality because "[d]efendants' position . . . ignores the fact that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs.")**.  The Court concludes that this case presents common questions of law and fact such as to satisfy Rule 23(a)(2).

### c.    Typicality

Rule 23(a)(3) requires a court to determine whether the "claims or defenses of the representative parties are typical of the claims or defenses of the class." **Fed. R. Civ. P. 23(a)(3)**. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, **713 F.2d 225, 232 (7th Cir. 1983)**. "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Beale v. EdgeMark Fin. Corp.*, **164 F.R.D. 649, 654 (N.D. Ill. 1995) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992))**. The purpose of the typicality requirement is to ensure that the interests of the class representatives are aligned with those of the class as a whole. *See Insolia v. Philip Morris Inc.*, **186 F.R.D. 535, 544**

(W.D. Wis. 1998); *Spencer v. Central States, S.E. & S.W. Areas Pension Fund*, 778 F. Supp. 985, 989 (N.D. Ill. 1991).

"Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar*, 167 F.R.D. at 57 (citing *Scholes*, 143 F.R.D. at 185). Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory. *See De La Fuente*, 713 F.2d at 232; *Riordan*, 113 F.R.D. at 63; *Edmondson v. Simon*, 86 F.R.D. 375, 381 (N.D. Ill. 1980). The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *See Clay v. American Tobacco Co.*, 188 F.R.D. 483, 491 (S.D. Ill. 1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)."). This is why a finding that commonality exists generally results in a finding that typicality also exists. *See Rosario*, 963 F.2d at 1018; *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 344 (N.D. Ill. 2001); *Arenson*, 164 F.R.D. at 664. *See also Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 214 (S.D. Ohio 2003).

In this case, Plaintiffs assert the same injury arising from the same course of conduct as all members of the proposed class, namely, losses to the Plan caused the decision of Plan fiduciaries to invest in Dynegy stock and to offer such stock as an investment alternative for Plan participants when they allegedly knew or should have known that the price of the stock was artificially inflated and that the stock was an imprudent investment for the Plan. Likewise, Plaintiffs' claims are premised upon the same legal theory, a breach of ERISA fiduciary duties, as

the claims of the proposed class.  Thus, the requirement of typicality is satisfied.  ***See Rogers*, 2006 WL 794734, at \*3 (finding typicality satisfied where "Rogers' claims are based on the same legal theory as that of the putative class – viz., breach of fiduciary duty – and his claims arise from the same course of conduct as that of the other class members:  the defendants' alleged failure prudently to manage the Plan's assets[.]")**; ***Summers v. UAL Corp. ESOP Comm.*, Case No. 03 C 1537, 2005 WL 1323262, at \*2 (N.D. Ill. Feb. 17, 2005) (finding typicality in a proposed class action under ERISA for breach of fiduciary duty because "the class members will be pursuing the same legal theories based upon Defendants' alleged misconduct.");** ***McDaniel v. North Am. Indem., N.V.*, Case No. IP-02-C-0422, 2003 WL 260704, at \*4 (S.D. Ind. Jan. 27, 2003) ("Pedcor, like the other named Plaintiffs and the class, brings claims pursuant to ERISA sections 502(a)(1), 502(a)(2), 502(a)(3), and 409.  Each of Plaintiffs' claims arises from Defendants' alleged course of conduct toward the class, and each of Plaintiffs' claims is based upon the same legal theory as the class members.  Plaintiffs' claims are typical of the class, and the typicality requirement of Rule 23(a) is satisfied.")**.

Although Defendants point to the individual investment histories of Plan participants as defeating typicality, the Court disagrees.  As discussed, this action is brought on behalf of the Plan, not the individual participants, so that Plaintiffs' claims, of necessity, are typical of the claims of the members of the proposed class.  "[G]iven the representative nature of suit pursuant to ERISA 502(a)(2), . . . each plan participant/class member's claims are . . . necessarily typical of those of the rest of the class . . . . In effect, class members, as the Plan's advocates, are each bringing the exact same suit." ***In re Enron Corp.*, 2006 WL 1662596, at \*11 (quoting *DiFelice*, 235 F.R.D. at 78-79)**.  ***See also In re Syncor Erisa Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005) (finding**

**typicality in a proposed class action for breach of ERISA fiduciary duties because "[e]ach of the plaintiffs was a Syncor employee and participated in the Plan during the class period . . . . If the allegations in the Consolidated Complaint are true, each member of the purported class suffered injuries as an indirect result of the same breaches of fiduciary duty by the remaining defendants."**).  *Cf. In re Louisiana-Pacific Corp.*, **No. Civ. 02-1023-K1, 2003 WL 23537936, at *5 (D. Or. Jan. 24, 2003) (differences in a named plaintiff's investment practices, including diversification, risk tolerance, access to information, and investment experience, did not prevent him from representing a class)**.

The Court likewise is unpersuaded that typicality is defeated by the possibility that Defendants will raise a defense under ERISA § 404(c), 29 U.S.C. § 1104(c), titled "Control over assets by participant or beneficiary," which provides, in pertinent part,

> (1)(A) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary [of Labor]) –
>
> (i) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and
> (ii) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control[.]

**29 U.S.C. § 1104(c)**.  Assuming Defendants raise such a defense, the Court fails to see why the defense would be unique to Plaintiffs' claims and would not instead apply to the claims of all of the members of the proposed class, given that it is clearly Defendants' position in this case that they bear no responsibility for the Plan losses at issue here in light of the control Plan participants exercised over the investment of their accounts in Dynegy stock.  ***See Rogers*, 2006 WL 794734, at *3 (finding that the possibility of a defense under ERISA § 404(c), 29 U.S.C. § 1104(c), did**

not defeat typicality where the defense was likely to be asserted as to numerous class members).

Finally, given that, as discussed, the overarching focus of this case is on the prudence of Defendants' investment decisions, the Court does not believe that issues regarding Plaintiffs' individual investment histories, to the extent they have any relevance, are likely to become the focus of this case. *See In re Ikon Office Solutions*, **191 F.R.D. at 465-66 (plaintiffs who may have been subject to the unique defense that they held their stock even after learning of defendants' fraudulent activity were not atypical since "[t]he focus of this inquiry is whether the named representatives rely on a similar legal theory as will the putative class, not whether the parties behaved identically in response to the alleged breaches of fiduciary duty.")**. Typicality is defeated only when "a major focus of the litigation will be on an arguable defense unique to the named plaintiff." *Koos v. First Nat'l Bank of Peoria*, **496 F.2d 1162, 1164 (7th Cir. 1974)**. Put another way, a plaintiff is not a proper class representative "only when a unique defense will consume the merits of a case." *Gaspar*, **167 F.R.D. at 58**. *See also Smith v. Short Term Loans*, **No. 99 C 1288, 2001 WL 127303, at *13 (N.D. Ill. Feb. 14, 2001)**. The Court sees no likelihood that Plaintiffs' individual investment histories will become the primary focus of this litigation. "Rule 23(a)(3) mandates the typicality of the named plaintiffs' claims – not defenses." *Gaspar*, **167 F.R.D. at 58**. For purposes of the typicality analysis, Plaintiffs have met their burden of showing that the requirements of Rule 23(a)(3) are satisfied. *See In re CMS Energy Erisa Litig.*, **225 F.R.D. 539, 543-44 (E.D. Mich. 2004) (defendants' potential defense under ERISA § 404(c), 29 U.S.C. § 1104(c), did not defeat commonality where the plaintiffs met their burden on class**

certification of showing the existence of a common question of law or fact).[5]

### d. Adequacy

The final Rule 23(a) requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." **Fed. R. Civ. P. 23(a)(4)**. In order to satisfy the requirements of Rule 23(a)(4), the class representative must "possess the same interest and suffer the same injury as the class members." ***Uhl v. Thoroughbred Tech. & Telecomms., Inc.***, **309 F.3d 978, 985 (7th Cir. 2002) (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). *See also Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2006 WL 2639972, at \*6 (S.D. Ill. Sept. 12, 2006)**. Thus, in

---

5.    The Court expresses in passing some skepticism about the validity of a defense under ERISA § 404(c), 29 U.S.C. § 1104(c), in this case.  The United States Department of Labor ("DOL") takes the position that selecting the investment options in a plan is not a function in the exercise of which plan fiduciaries are shielded from liability by the statute.  *See* **29 C.F.R. § 2550.404c-1(a)(1);** *Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans)*, **57 Fed. Reg. 46906, 46924 n.27 (Oct. 13, 1992).** *See also* **DOL Op. Letter No. 90-05A, 1990 WL 172964, at \*3 (Mar. 29, 1990)**.  The Court is required, of course, to give deference to the DOL's opinion. *See Thomas Jefferson Univ. v. Shalala*, **512 U.S. 504, 512 (1994) ("We must give substantial deference to an agency's interpretation of its own regulations.").** *See also Trotter v. B & W Cartage Co.*, **No. 05-cv-0205-MJR, 2006 WL 1004882, at \*4 (S.D. Ill. Apr. 13, 2006) ("[A]n agency's interpretation of its own regulations is entitled to a relatively high level of deference . . . . A court must accept the interpretation unless it is . . . plainly erroneous or inconsistent with the regulation.")**.  The Court notes further that the majority of courts to have interpreted ERISA § 404(c), 29 U.S.C. § 1104(c), have adopted the DOL's position. *See DiFelice v. U.S. Airways, Inc.*, **397 F. Supp. 2d 758, 774-78 (E.D.Va. 2005);** *In re Dynegy, Inc. Erisa Litig.*, **309 F. Supp. 2d 861, 893-94 (S.D. Tex. 2004);** *In re Enron Corp. Sec., Derivative & ERISA Litig.*, **284 F. Supp. 2d at 574-79;** *In re WorldCom, Inc.*, **263 F. Supp. 2d 763-65;** *Franklin v. First Union Corp.*, **84 F. Supp. 2d 720, 732 (E.D. Va. 2000)**.  *But cf. Langbecker v. Electronic Data Sys. Corp.*, **No. 04-41760, 2007 WL 117465, at \*\*6-9 (5th Cir. Jan. 18, 2007)**.  However, the Court need not decide the issue at this time. *See Rogers*, **2006 WL 794734, at \*5 n.4 (noting that the applicability of a defense under ERISA § 404(c), 29 U.S.C. § 1104(c), is an issue going to the merits of a claim of breach of fiduciary duty and thus outside the scope of a court's inquiry on class certification);** *In re Williams Cos. ERISA Litig.*, **231 F.R.D. at 421 (noting that "whether the Plan falls under § 404(c) is subject to disagreement between the parties, and that issue is not properly before the Court" on a motion for class certification)**.

evaluating adequacy, a court is required to make sure that there are no inconsistencies between the interests of the named party and the class that he or she represents. *See Uhl*, **309 F.3d at 985 (citing** *Amchem Prods., Inc. v. Windsor*, **521 U.S. 591, 625 (1997))**.  Defendants aggressively challenge Plaintiffs' adequacy, contending that they have conflicts of interest with the members of the proposed class because each Plaintiff has an incentive to argue that Defendants breached their fiduciary duties on a different date that will maximize their personal recovery.  In support of their position, Defendants have submitted to the Court a 124-page report by David J. Ross, an executive at Lexecon, Inc., which Ross describes as "a consulting firm that specializes in the application of economics to a variety of legal and regulatory issues." **Doc. 85, Ex. 5 at 1**.  Plaintiffs in turn have raised an evidentiary challenge to the Ross report, arguing that Ross lacks expertise in ERISA and that his report consists of impermissible expert testimony on legal issues. *See* **Fed. R. Evid. 704;** *United States v. Baskes*, **649 F.2d 471, 479 (7th Cir. 1980)**.

Assuming that strict rules of evidence apply in the class certification context, ***see Eisen*, 417 U.S. at 178 (noting that a class action hearing of necessity is not accompanied by the traditional rules and procedures applicable to civil trials);** *Thompson v. Board of Educ. of Romeo Cmty. Schs.*, **71 F.R.D. 398, 401 n. 2 (W.D. Mich. 1976) (the Federal Rules of Evidence "need not be viewed as binding during a hearing on such preliminary matters as class certification")**, the Court in its discretion has considered the Ross report in evaluating class certification.  Ross clearly is qualified as an expert in financial economics, corporate finance, and valuation, and has published a number of articles on these subjects. *See* **Doc. 85, Ex. 5 at 1-2, 15-16**.  His extensive background as an expert witness, although largely in the area of securities, includes testimony in ERISA class actions. *See id*. **at 16, 17**.  His report is based on his

areas of expertise and does not amount merely to a legal conclusion regarding an ultimate issue in this case.  However, though the Court finds the Ross report admissible as evidence, the Court regards as unpersuasive the report's arguments concerning conflicts of interest among the members of the proposed class.

Without wishing to oversimplify, the Ross report opines that, because Plaintiffs and, presumably, all members of the proposed class, traded Dynegy shares on different dates, then, depending on whether they made or lost money on those trades, they all have differing views as to the prudence of investment in Dynegy shares that put them at conflict.  The report contends that each Plaintiff and class member has an interest in pointing to a different date as the "optimal breach date" on which Dynegy stock was an imprudent Plan investment so as to maximize his or her individual recovery.  This is the theory of "seller-purchaser" conflicts, which originates in securities law and which holds that, in a case where manipulation of the price of a stock is alleged, individual holders of the stock necessarily will have bought and sold at different times and thus will differ with respect to what they contend would have been the stock's unmanipulated price, so that no holder of the stock is capable of representing another holder in a class action.  ***See generally* Kermit Roosevelt III, *Defeating Class Certification in Securities Fraud Actions*, 22 Rev. Litig. 405, 427-28 (2003)**.  As Plaintiffs point out, the theory of seller-purchaser conflicts as precluding class certification has been overwhelmingly rejected in securities fraud class actions.  ***See, e.g., In re Safeguard Scientifics*, 216 F.R.D. 577, 581 (E.D. Pa. 2003); *In re Honeywell Int'l Inc. Sec. Litig.*, 211 F.R.D. 255, 261-62 (D.N.J. 2002); *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 400 (D. Or. 1996); *In re Intelligent Elecs., Inc. Sec. Litig.*, Civ. A. No. 92-1905, 1996 WL 67622, at \*\*4-5 (E.D. Pa. Feb. 13, 1996); *In re Regal Communications Corp. Sec. Litig.*,**

**No. 94-179, 1995 WL 550454, at \*8 (E.D. Pa. Sept. 14, 1995); *In re AST Research Sec. Litig.*,**

**No. CV 94-1370 SVW, 1994 WL 722888, at \*\*4-5 (C.D. Cal. Nov. 8, 1994); *Yamner v. Boich*,**

**C-92-20597 RPA, 1994 WL 514035, at \*\*7-8 (N.D. Cal. Sept. 15, 1994); *Welling v. Alexy*, 155**

**F.R.D. 654, 661-62 (N.D. Cal. 1994)**.  ***But cf. In re Seagate Tech. II Sec. Litig.*, 843 F. Supp.**

**1341, 1347-67 (N.D. Cal. 1994)**.  The Court believes that the theory of seller-purchaser conflicts

is even less apropos in the ERISA context.

As already has been noted several times, this is an action on behalf of the

Plan to recover all losses caused to the Plan by Defendants' alleged breaches of their fiduciary

duties.  The Court's task, as has been discussed, is to determine whether, under an objective

standard, Dynegy stock was an imprudent Plan investment and, if so, whether it has ceased to be

such.  No individual member of the proposed class has an incentive to maximize his or her

individual recovery because the recovery in this case is on behalf of the Plan and is the same with

respect to each Plaintiff and unnamed class member, that is, all of the loss to the Plan caused by the

alleged fiduciary breaches.  For these reasons, the theory of seller-purchaser conflicts has been

rejected by the majority of courts in class actions under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

***See In re Aquila ERISA Litig.*, 237 F.R.D. 202, 210 (W.D. Mo. 2006) ("This Court . . . finds**

**Defendants' 'optimal breach date' argument unpersuasive.  It is the Plan that will prevail or**

**not prevail in this case, not the individual Plaintiffs."); *DiFelice*, 235 F.R.D. at 79 ("[B]ecause**

**. . . the Plan has a single 'optimal imprudence date,' and as this lawsuit is brought on behalf**

**of the Plan, individual participants' 'optimal imprudence dates' are irrelevant."); *Summers***

***v. UAL Corp. ESOP Comm.*, 2005 WL 1323262, at \*5 (rejecting the defendants' argument that**

**"the class will not be able to agree as to when the UAL stock should be sold" as an objection**

**to adequacy in a proposed class action under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)); *In re Electronic Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 623 (E.D. Tex. 2004) ("There can be no . . . conflicts [among the class members] because each class member is bringing suit on the Plan's behalf, not as an individual.  In effect, class members, as the Plan's advocates, are each bringing the exact same suit.").  *Cf. Breedlove v. Tele-Trip Co.*, No. 91 C 5702, 1993 WL 284327, at \*7 (N.D. Ill. July 27, 1993) (finding no conflict between members of a proposed class where although former employees of a defendant sought benefit increases that might have to be paid by current employees, the relief sought would inure to the benefit of all class members).  *But cf. Langbecker*, 2007 WL 117465, at \*\*11-12 (finding that adequacy was not satisfied in a class action for breach of fiduciary duty under ERISA where the members of the proposed class each suffered different damages as a result of the alleged fiduciary breaches).**

      The Court notes further that, just as the theory of seller-purchaser conflicts appears to render it impossible to maintain a class action based on the alleged manipulation of the value of a stock in the securities context, so too it appears to rule out the possibility of maintaining a class action under ERISA based on a fiduciary's imprudent investment decisions.  The Court finds such a position impossible to reconcile with the familiar principle that "ERISA is a remedial statute to be liberally construed in favor of employee benefit fund participants." ***Kross v. Western Elec. Co.*, 701 F.2d 1238, 1242 (7th Cir. 1983)**.  ***See also Khan v. Grotnes Metalforming Sys., Inc.*, 679 F. Supp. 751, 756-57 (N.D. Ill. 1988) ("Congress intended ERISA to be remedial legislation.  The primary purpose of the statute is to protect participants in employee benefit plans from losing anticipated benefits because their selected representatives mismanage the assets which fund their benefit programs.")**.  Nor does the Court comprehend how rendering fiduciaries effectively

immune from class-action litigation regarding breaches of their duties under ERISA squares with the rule that the fiduciary duties imposed by the statute, which originate of course in the law of trusts and in fact are "more stringent" than those common-law duties, are "the highest known to law." *Boeckman*, 461 F. Supp. 2d at 815. *See also Pegram v. Herdrich*, 530 U.S. 211, 235 (2000) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)) (ERISA requires fiduciaries to act with "'an eye single' toward beneficiaries' interests"); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 302 (7th Cir. 1985) (quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 330 (1981)) ("The fiduciary standards [under ERISA] . . . must be enforced with . . . uncompromising rigidity."). The Court concludes that Plaintiffs have no conflicts of interest with the members of the proposed class that prevent them from serving as adequate class representatives. Thus, all of the requirements of Rule 23(a) are satisfied in this case.[6]

### 4. Rule 23(b) Requirements

Having found that the requirements of Rule 23(a) are satisfied, the Court turns to the question of whether a class action can be maintained under one of Rule 23(b)'s three subsections. Plaintiffs seek class certification under Rule 23(b)(1)(A), (b)(1)(B), and (b)(2). Rule 23(b)

---

6.   The Court notes that the requirement of adequacy under Rule 23(a)(4) frequently is set out as a two-part inquiry into (1) whether a named plaintiff is an adequate class representative and (2) whether the named plaintiff's counsel is adequate. *See, e.g., Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002 WL 655679, at *3 (N.D. Ill. Apr. 19, 2002) (citing *Retired Chicago Police Ass'n*, 7 F.3d at 598). However, in view of amendments to Rule 23 in 2003, it is clear that the inquiry into the adequacy of counsel is governed not by Rule 23(a)(4) but by Rule 23(g). The commentary to Rule 23 explains that, in light of the 2003 amendments, "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision." **Fed. R. Civ. P. 23 advisory committee's note**. *See also Westefer*, 2006 WL 2639972, at *6 n.2, *11; *In re Metlife Demutualization Litig.*, 229 F.R.D. 369, 376 (E.D.N.Y. 2005). Thus, because Rule 23(a)(4) no longer governs the selection of class counsel, the Court will address the adequacy of the proposed class counsel in a later section of this Order.

authorizes certification of a class action if the prerequisites of subdivision (a) are satisfied, and in addition,

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct of the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunction relief or corresponding declaratory relief with respect to the class as a whole.

**Fed. R. Civ. P. 23(b)(1), (b)(2)**.

"[E]ach class member in actions for money damages is entitled as a matter of due process to personal notice and an opportunity to opt out of the class action.  Accordingly, Rule 23(c)(2) guarantees those rights for each member of a class certified under Rule 23(b)(3)." ***Lemon v. International Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000) (citation omitted)**.  "However, the Federal Rules of Civil Procedure do not provide comparable procedural guarantees of those rights for a class certified under [Rule 23] (b)(1) or (b)(2), and as a result, . . . certification [under those subsections] does not ensure personal notice or opportunity to opt out even if some or all the plaintiffs pray for monetary damages." ***Id*.  *See also Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 896 (7th Cir. 1999) ("If the action proceeds under Rule 23(b)(3), then each member of the class must receive notice and an opportunity to opt out and litigate (or not) on his own behalf . . . . If it proceeds under Rule 23(b)(2), by contrast, then no notice will be given, and no one will be allowed to opt out."); *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816(DLC), 2004 WL 2338151, at *8 (S.D.N.Y. Oct. 18, 2004) ("There is no**

**opportunity under any Rule 23(b)(1)(B) class action to opt out[.]")**.  *Cf. Allison v. Citgo Petroleum Corp.*, **151 F.3d 402, 416-18 (5th Cir. 1998) (certification of a mandatory class was inappropriate where the race-discrimination claims of the members of the proposed class presented individualized factual issues)**.

With the foregoing principles in mind, the Court concludes that Count I of Plaintiffs' operative complaint in this case is suitable for class certification under Rule 23(b)(1)(B).  The commentary to Rule 23(b)(1)(B) discusses the types of cases in which certification under this subsection is appropriate, specifically identifying an action against a fiduciary for breach of fiduciary duty as such a case:

> This clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter.  The vice of an individual action would lie in the fact that the other members of the class, thus practically concluded, would have had no representation in the lawsuit.  In an action by policy holders against a fraternal benefit association attacking a financial reorganization of the society, it would hardly have been practical, if indeed it would have been possible, to confine the effects of a validation of the reorganization to the individual plaintiffs.  Consequently a class action was called for with adequate representation of all members of the class.  For much the same reason actions by shareholders to compel the declaration of a dividend[,] the proper recognition and handling of redemption or pre-emption rights, or the like (or actions by the corporation for corresponding declarations of rights), should ordinarily be conducted as class actions, although the matter has been much obscured by the insistence that each shareholder has an individual claim . . . . *The same reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust.*

**Fed. R. Civ. P. 23 advisory committee's note (citations omitted) (emphasis added)**.  *See also In re Enron Corp.*, **2006 WL 1662596, at \*14 (citing the commentary to Rule 23 in support of a grant of class certification under Rule 23(b)(1)(B) in a case involving alleged breach of fiduciary duties under ERISA)**.

Moreover, in ***Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)**, the Court specifically identified cases involving breach of fiduciary duty as paradigmatically suited for certification under Rule 23(b)(1)(B):

> Rule 23(b)(1)(B) speaks from a vantage point within the class, [from which the Advisory Committee] spied out situations where lawsuits conducted with individual members of the class would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests . . . . Classic examples of such a risk of impairment may, for example, be found in suits brought to reorganize fraternal-benefit societies; actions by shareholders to declare a dividend or otherwise to fix [their] rights; and actions charging a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust.  In each of these categories, the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members.

**527 U.S. at 833-34 (internal quotations and citations omitted)**.  ***See also Rogers*, 2006 WL 794734, at \*9 (citing *Ortiz* in support of a grant of class certification under Rule 23(b)(1)(B) in a case involving alleged breach of fiduciary duties under ERISA); *In re Syncor Erisa Litig.*, 227 F.R.D. at 346 (same)**.

The Court has no difficulty concluding that class certification is appropriate in this case under Rule 23(b)(1)(B).  Because suits brought pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), are representational or derivative, i.e., brought on behalf of a plan, "ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." ***DiFelice*, 235 F.R.D. at 80 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004)) (granting class certification under Rule 23(b)(1)(B) in a suit alleging breach of ERISA fiduciary duties)**.  "When a breach of fiduciary duty is at issue, any individual adjudication regarding the breach would necessarily affect the interests of others" and "[t]herefore it is

appropriate to certify the class pursuant to Rule 23(b)(1)(B)." ***Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, at \*3 (E.D. Pa. Dec. 1, 2004) (granting class certification pursuant to Rule 23(b)(1)(B): "Here, where Plaintiffs allege that the Mint breached fiduciary duties to 112 employees under ERISA and other laws, any decision with respect to one employee would necessarily affect the interests of the other 111 employees.")**. *See also In re Enron Corp.*, 2006 WL 1662596, at \*14 (granting class certification under Rule 23(b)(1)(B) in light of the fact that, because actions for breach of fiduciary duty are derivative in nature, an adjudication regarding the rights of any single class member was likely to be dispositive as to the rights of all class members); *Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.*, 140 F.R.D. 474, 479 (S.D. Ga. 1991) (granting Rule 23(b)(1)(B) certification: "Because individuals may bring class actions to remedy breaches of fiduciary duty only on behalf of the plan, rather than themselves, the Court cannot allow participants or beneficiaries to opt out of this class.")**.  It is clear that adjudications with respect to individual members of the proposed class will as a practical matter be dispositive of the interests of other class members, so that class certification pursuant to Rule 23(b)(1)(B) will be granted.

With respect to Count II of Plaintiffs' operative complaint, the Court concludes that class certification is not appropriate under either Rule 23(b)(1) or (b)(2), inasmuch as Count II raises issues of individual reliance on alleged misrepresentations by Plan fiduciaries.  It is the case, of course, that misrepresentations by a plan fiduciary are a breach of fiduciary duty under ERISA.  *See Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983) ("Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in . . . 29 U.S.C. § 1104(a)(1).")**.  However, the Seventh Circuit Court of Appeals has emphasized

that reliance on a fiduciary's misrepresentations is a necessary element of a claim for breach of fiduciary duty based on such misrepresentations, going as it does to the issue of causation.  ***See Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 681-82 (7th Cir. 2002).  *See also Tootle v. ARINC, Inc.*, 222 F.R.D. 88, 96-97 (D. Md. 2004)**.  In light of the individualized issues of reliance presented by Count II of Plaintiffs' complaint, the Court concludes that class certification is inappropriate as to Count II.  ***See, e.g., Nelson v. IPALCO Enters., Inc.*, No. IPO2-477CHK, 2003 WL 23101792, at **10-11 (S.D. Ind. Sept. 30, 2003) (finding Rule 23(b)(1) class certification inappropriate as to fiduciary misrepresentation claims under ERISA due to individualized issues of reliance and causation)**.  Accordingly, the Court will grant class certification as to Count I of Plaintiffs' complaint but deny class certification as to Count II.[7]

### 5.    Adequacy of Counsel

Having determined that Count I of Plaintiffs' complaint is appropriate for class certification, the Court addresses as a final matter the issue of adequacy of the proposed counsel for the class.  Rule 23 provides, in pertinent part, "Unless a statute provides otherwise, a court that certifies a class must appoint class counsel."  **Fed. R. Civ. P. 23(g)(1)(A)**.  The rule provides further that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class."  **Fed. R. Civ. P. 23(g)(1)(B)**.  In evaluating proposed class counsel, a court must consider:  the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; and the

---

7.    Because the Court concludes that class certification as to Count I is appropriate under Rule 23(b)(1)(B), the Court does not reach the issue of whether certification of Count I as a class action is proper under Rule 23(b)(1)(A) or (b)(2).

resources counsel will commit to representing the class.  *See* **Fed. R. Civ. P. 23(g)(1)(C)(i)**.  Also, the court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." **Fed. R. Civ. P. 23(g)(1)(C)(ii)**.  The court "may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs" and "may make further orders in connection with the appointment." **Fed. R. Civ. P. 23(g)(1)(C)(iii)-(iv)**.

In this instance, the firm of Lewis, Feinberg, Lee, Renaker & Jackson, P.C., and the firm of Schuchat, Cook & Werner seek appointment as class counsel.  Defendants do not dispute the adequacy of these firms to serve as class counsel in this matter, and the uncontroverted declaration of Teresa S. Renaker, a partner in the firm of Lewis, Feinberg, Lee, Renaker & Jackson, P.C., in support of the appointment of her firm and Schuchat, Cook & Werner as class counsel establishes that both firms are well-qualified to represent the class.  *See* **Doc. 76**.  Both firms are experienced in ERISA class action litigation and have successfully represented classes in cases similar to the case at bar.  Also, proposed class counsel have dutifully investigated Plaintiffs' claims and have presented them in a coherent class action complaint.  Although Renaker's declaration is silent as to the issue of attorney's fees, presumably any such fee will constitute a percentage of the class recovery, if any, in this case.  *See In re Synthroid Mktg. Litig.*, **264 F.3d 712, 717-19 (7th Cir. 2001);** *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, **No. 02-CV-1109-DRH, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004);** *Berger v. Xerox Corp. Ret. Income Guar. Plan*, **No. 00-584-DRH, 2004 WL 287902, at **2-3 (S.D. Ill. Jan. 22, 2004)**.  The Court concludes that the firm of Lewis, Feinberg, Lee, Renaker & Jackson, P.C., and the firm of Schuchat, Cook & Werner are adequate to serve as class counsel in this case.

## CONCLUSION

Plaintiffs' Motion for Class Certification (Doc. 71) is **GRANTED in part and DENIED in part.** Plaintiffs' request for class certification of Count I of their operative Complaint in this cause (Doc. 117) is **GRANTED**, and Count I is certified as a class action pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure. The class is defined as follows:

> All Participants in the Plan for whose individual accounts the Plan held shares of Dynegy stock at any time from February 1, 2000 to the present. Excluded from the Class are persons who have taken their full distribution of benefits under the Plan. Excluded further from the Class are the individual defendants, officers and directors of the corporate defendants, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

The Court **APPOINTS** Plaintiffs Dennis Lively, Willis Harms, and Larry Grab as representatives of the class. The Court **APPOINTS** the firm of Lewis, Feinberg, Lee, Renaker & Jackson, P.C., and the firm of Schuchat, Cook, & Werner as class counsel. Plaintiffs' request for class certification as to Count II of their operative complaint is **DENIED**. Plaintiffs' Motion to Clarify June 16, 2006 Order (Doc. 142) is **DENIED as moot**.

**IT IS SO ORDERED.**

**DATED this 2d day of March, 2007.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**