Jeffrey Lewis, *Pro Hac Vice*
Teresa S. Renaker, *Pro Hac Vice*
Margaret E. Hasselman, *Pro Hac Vice*
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone (510) 839-6824
Facsimile (510) 839-7839

James I. Singer, Illinois Bar No. 02620499
Matthew B. Leppert, Illinois Bar No. 6283363
SCHUCHAT, COOK & WERNER
1221 Locust Street, Second Floor
St. Louis, MO 63103
Telephone (314) 621-2626
Facsimile (314) 621-2378

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DENNIS LIVELY, et al., | ) | |
| Plaintiffs, | ) | Case No. 05-63 MJR |
| vs. | ) | |
| DYNEGY, INC., et al., | ) | **Class Action** |
| Defendants. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR ORDER CONDITIONALLY AMENDING DEFINITION OF CERTIFIED CLASS FOR SETTLEMENT PURPOSES, PRELIMINARILY APPROVING PROPOSED SETTLEMENT, APPROVING FORM AND DISSEMINATION OF CLASS NOTICE, APPROVING SETTLEMENT ADMINISTRATOR, AND SETTING DATE FOR HEARING ON FINAL APPROVAL**

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION..................................................... 1

II.   ALLEGATIONS AND PROCEDURAL BACKGROUND........................ 1

III.  TERMS OF THE PROPOSED CLASS SETTLEMENT...................... 2

      A.    Description of the Settlement Class...................... 3

      B.    The Settlement Fund..................................... 4

      C.    Plan of Allocation...................................... 4

      D.    Other Terms of the Settlement........................... 5

            1.    Independent Fiduciary.............................. 5

            2.    Independent Fiduciary Approval of Settlement........ 5

            3.    Resolution of Issues with the Department of Labor.... 6

            4.    Attorneys' Fees, Costs, Expenses................... 6

            5.    Service Incentive Payments......................... 6

            6.    Release and Non-Admission.......................... 6

            7.    Notice to the Settlement Class..................... 6

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL.................. 6

      A.    The Standard for Preliminary Approval................... 6

      B.    The Proposed Settlement Is the Result of Arm's-Length, Informed
            Negotiations Following Hard-Fought Litigation........... 7

      C.    The Proposed Settlement Will Provide Significant Benefits to the Class........ 8

      D.    The Requested Attorneys' Fees and Payments to the Class Representatives
            for Service to the Class Are Reasonable................. 9

      E.    The Proposed Plan of Allocation Is Reasonable.......... 10

            1.    The Plan of Allocation............................ 10

            2.    Key Dates Affecting the Plan of Allocation......... 11

            3.    All Class Members Will Receive Their Settlement Shares as
                  Tax-Deferred Retirement Funds, Ensuring That Class Members
                  Receive Maximum Value From the Settlement........ 13

F.    The Class Definition Should Be Modified to Include Plan Participants Excluded From the Certified Class... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V.     THE NOTICE AND PLAN OF NOTICE SHOULD BE APPROVED.. . . . . . . . . . . . 15

VI.    THE COURT SHOULD ESTABLISH DATES FOR EFFECTUATING FINAL APPROVAL OF THE SETTLEMENT... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VII.   THE SETTLEMENT ADMINISTRATOR SHOULD BE APPROVED.. . . . . . . . . . . 16

VIII.  CONCLUSION.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

Page No.

**FEDERAL CASES**

Amchem Products Inc. v. Windsor, 521 U.S. 591 (1997)................................. 6

Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305 (7th Cir. 1980). ......... 7

Burns v. Elrod, 757 F.2d 151 (7th Cir. 1985)..................................... 15

E.E.O.C. v. Hiram Walker & Sons, Inc., 768 F.2d 884 (7th Cir. 1985). .................... 6

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974). ................................. 15

Florin v. Nationsbank of Georgia, 60 F.3d 1245 (7th Cir. 1995)........................ 10

Harzewski v. Guidant Corp., 489 F.3d 799 (7th Cir. 2007). ......................... 3, 14

In re Continental Illinois Sec. Litig., 962 F.2d 566 (7th Cir. 1992)...................... 9

Isby v. Bayh, 75 F.3d 1191 (7th Cir. 1996). ..................................... 6

Karraker v. Rent-A-Center, Inc., 492 F.3d 896 (7th Cir. 2007). ....................... 9

Lively v. Dynegy, Inc., 2007 WL 685861 (S.D. Ill. Mar. 20, 2007). ................ 2, 8, 14

Lively v. Dynegy, Inc., 420 F. Supp. 2d 949 (S.D. Ill. 2006). ....................... 2, 8

Mangone v. First USA Bank, 206 F.R.D. 222 (S.D. Ill. 2001). ........................ 15

Schied v. Dynegy, Inc., No. H-02-3076 (S.D. Tex.)................................. 8

Shannahan, et al., v. Dynegy, Inc., et al., No. 4:2006cv00160 (S.D. Tex.). ................ 8

Tucker v. Walgreens Co., 2007 WL 291558  (S.D. Ill. Oct. 5, 2007)..................... 7

**FEDERAL STATUTES**

ERISA § 409, 29 U.S.C. § 1109. .............................................. 2

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). ..................................... 2

**OTHER AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004).................................... 15

Newberg on Class Actions (4th ed. 2002). .................................... 7, 16

# I.    INTRODUCTION.

Named Plaintiffs, Dennis Lively, Willis Harms, and Larry Grab, on behalf of themselves and all others similarly situated, move this Court for an order preliminarily approving the Parties' Stipulation of Settlement, modifying the class definition, and approving the form and manner of class notice, and request that this Court schedule a Fairness Hearing for final approval of the settlement.  A copy of the proposed Findings and Order Conditionally Amending Definition of Certified Class for Settlement Purposes, Preliminarily Approving Proposed Settlement, Approving Form and Dissemination of Class Notice, Approving Settlement Administrator, and Setting Date for Hearing on Final Approval ("Preliminary Approval Order") is submitted herewith.  The proposed settlement includes a payment of $17.9 million, less attorneys' fees, costs, and service payments, to the Illinois Power Company Incentive Savings Plan for Employees Covered Under a Collective Bargaining Agreement ("the Plan"), which will be allocated among Plan participant class members, and injunctive relief.  In further support of this Unopposed Motion, Plaintiffs state as follows.

# II.    ALLEGATIONS AND PROCEDURAL BACKGROUND.

This case arises out of the investment of assets of the Plan in stock of its sponsoring employer, Dynegy, Inc. ("Dynegy").  Defendants are the fiduciaries of the Plan entrusted with responsibility for investing the Plan's assets prudently and for administering the Plan in the interests of the Plan's participants and beneficiaries.  Plaintiffs alleged, on behalf of themselves and all others similarly situated, that Defendants failed in these duties, causing significant losses to the Plan.  In particular, Plaintiffs contended (1) that Defendants continued to invest and allow investment of the Plan's assets in Dynegy stock at a time when the fiduciaries knew or should have known that the stock was an imprudent investment due to the effect on the stock price of financial improprieties that artificially inflated the price of the stock; and (2) that Defendants made misrepresentations to and withheld information from Plan participants concerning Dynegy, that Plaintiffs and Class members relied upon these misrepresentations and nondisclosures to their detriment when the Plan purchased and/or held Dynegy stock, and that the Plan incurred losses on those investments, resulting in reductions in the value on the Plan accounts of Plaintiffs and the

Class members.  Plaintiffs' two claims arise under Sections 502(a)(2) and 409 of ERISA[1], which together permit plan participants to bring civil actions to hold plan fiduciaries personally liable for losses to a plan resulting from breaches of fiduciary duty.  29 U.S.C. §§ 1132(a)(2), 1109.  The Defendants have denied that they have liability to the Plan or its participants or beneficiaries.  If the litigation were to continue, the Defendants would raise numerous defenses to liability.

Defendants brought motions to dismiss Plaintiffs' claims, primarily on the basis that Plaintiffs sought individual relief allegedly unavailable under § 502(a)(2).  The Court rejected this argument, holding that the claims were for relief to the Plan as a whole.  *Lively v. Dynegy, Inc.*, 420 F. Supp. 2d 949, 953 (S.D. Ill. 2006).  However, the Court dismissed the misrepresentation claim as not pleaded with sufficient particularity to the extent Plaintiffs asserted affirmative misrepresentations, rather than nondisclosures.  *Id.* at 955.

On March 2, 2007, the Court certified the following class:

> All Participants in the Plan for whose individual accounts the Plan held shares of Dynegy stock at any time from February 1, 2000 to the present. Excluded from the Class are persons who have taken their full distribution of benefits under the Plan. Excluded further from the Class are the individual defendants, officers and directors of the corporate defendants, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

*Lively v. Dynegy, Inc.*, 2007 WL 685861, at *18 (S.D. Ill. Mar. 2, 2007).  The Court excluded from the class former employees who had received distributions of their benefits under the Plan.  Defendants petitioned for permission to appeal under Federal Rule of Civil Procedure 23(f).  The Seventh Circuit granted Defendants' petition on April 27, 2007.  The Seventh Circuit then referred the case to mediation.  Pursuant to this mediation referral, and with the help of a Seventh Circuit mediator, the parties participated in several telephonic settlement discussions and two days of face-to-face negotiations.  As a result, the parties negotiated this proposed Settlement.  (*See* Declaration of Jeffrey Lewis in Support of Preliminary Approval Motion ("Lewis Dec.") at ¶ 4.)

## III.   TERMS OF THE PROPOSED CLASS SETTLEMENT.

The terms of the Parties' agreement are set forth in the Class Action Settlement

---

[1]  The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 05-63 MJR                                                                    Page 2

Agreement attached hereto as Exhibit A.[2]  Pursuant to the Settlement, all Class Members, whether or not they have previously received distributions of benefits, will receive significant benefits.

### A.    Description of the Settlement Class.

The Settlement provides for a mandatory, non-opt-out Settlement Class, binding only with respect to this Settlement.  The Settlement Class is defined as follows:

(1)    All Persons for whose individual accounts the Plan has held shares of Dynegy Inc. stock at any time from February 1, 2000, to January 17, 2008, inclusive.

(2)    This includes as to each person within the scope of subsection (1) of this section his, her, or its beneficiaries, alternate payees, Representatives and Successors-in-Interest.

(3)    Excluded from the Class are the individual defendants (defined to include all Defendants other than Dynegy Inc., Dynegy Midwest Generation, Inc., and Illinois Power Company) and all officers and directors of Dynegy Inc., Dynegy Midwest Generation, Inc., or Illinois Power Company, or any of Individual Defendants' Immediate Family, beneficiaries, alternate payees, Representatives or Successors-In-Interest, except for Immediate Family, beneficiaries, alternate payees, Representatives or Successors-in-Interest who themselves were participants in the Plan, who shall be considered members of the Settlement Class with respect to their own Plan accounts.

(Exh. A, §§ 1.42, 2.1.)  In the event that the Settlement is not finally approved by the Court or is overturned on appeal, then the class action status of the case shall return to its present status (that is, with a class certified by this Court and with Defendants' appeal of that certification pending).

The settlement class is larger than the class certified by the Court in that it includes former employees who have received distributions of their benefits under the Plan.  Although the Court ruled that these former employees should be excluded from the class because they lacked standing to proceed under ERISA, the Seventh Circuit subsequently held to the contrary on the standing issue.  *See Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007).  As a result, the settlement class represents the class that would go forward, absent the settlement and if the class certification survived Defendants' appeal, because under those circumstances *Harzewski* would

---

[2]  For the Court's convenience, the proposed order preliminarily approving the settlement, with its exhibits, that is referenced in the Settlement Agreement as an exhibit thereto has been separately filed.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 05-63 MJR                                                                                           Page 3

1  require modification of the class definition to include these former employees.  Although

2  Defendants have not conceded this point, they have agreed to the modified class definition for

3  settlement purposes.  (*See* § F, below.)

**B.    The Settlement Fund.**

4

5      The Settlement Agreement provides that Defendant's insurer will pay the Class Settlement

6  Amount – $17,900,000.00 – into an interest-bearing escrow account ("the Settlement Fund")

7  within ten business days after preliminary approval by the Court (the "Settlement Fund").  (Exh.

8  A, § 7.2.)[3]  The Settlement Fund, with interest, less all taxes on the interest, any approved service

9  compensation to Plaintiffs, costs of settlement administration, appropriate attorneys' fees, costs,

10 and expenses will be distributed to the Plan when the settlement becomes final.  The Plan will then

11 distribute the net proceeds of the Settlement Fund to the Participants in the Plan pursuant to a

12 Plan of Allocation proposed below.  (Exh. A, § 8.3.)

**C.    Plan of Allocation.**

13

14     Pursuant to the Settlement Agreement (*see* Exh. A, § 8.3.4), Class Counsel hereby

15 submits the proposed plan set forth below for allocating the Settlement Fund.  Pursuant to the

16 Settlement Agreement, Defendants have reviewed and approved this plan only for feasibility of

17 implementation.

18     1.    Using the *Plan's* records and other records as necessary, the *Plan* trustee will
            identify each member of the *Settlement Class*.
19

20     2.    An "*Adjusted Net Loss*" will be calculated for each member of the *Settlement
            Class.  Adjusted Net Loss* will be a positive number equal to:

21     (a)   the sum of:

22
        i.    the participant's Dynegy Stock Fund *Plan* account balance at the beginning of
23            the Class Period (February 1, 2000);

24      ii.   plus 1.1 times the dollar amount added (through employee contributions,
              employer contributions in cash or stock or cash dividends, and re-allocation of
25

26     _____

       [3] If the Court does not grant this Motion for Preliminary Approval within 60 days after
27  filing of this motion, then Defendants' insurer will pay the Class Settlement Amount into the
    Settlement Fund within 10 business days of receiving written notification of Plaintiffs'
28  establishment of, and information regarding, a "Pre-Approval Escrow Account."  (*Id.*)

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 05-63 MJR                                                    Page 4

amounts previously invested in other Plan options) to the participant's Dynegy Stock Fund *Plan* account from the start of the Class Period through July 31, 2000;

 iii. plus 1.2 times the dollar amount added to the participant's Dynegy Stock Fund *Plan* account from August 1, 2000, through July 31, 2001;

 iv. plus 1.3 times the dollar amount added to the participant's Dynegy Stock Fund *Plan* account from August 1, 2001, through April 30, 2002;

 v. plus the dollar amount added to a participant's Dynegy Stock Fund *Plan* account from April 30, 2002, until the end of the class period;

(b) *minus* the sum of*:*

 i. the dollar amount of the participant's Dynegy Stock Fund *Plan* account balance at the end of the Class Period;

 ii. plus the dollar amount of all distributions and transfers from the participant's Dynegy Stock Fund *Plan* account during the Class Period.

The *Adjusted Net Losses* of the *Settlement Class* members shall be aggregated. Each *Settlement Class* member will be assigned an *Adjusted Net Loss Percentage*, which shall be his, her or its *Adjusted Net Loss* as a percentage of the aggregated *Adjusted Net Losses* of the entire *Settlement Class*.

For any Settlement Class member who no longer has a Plan account (for example, because he or she received a distribution of benefits upon termination of employment), an account will be re-established and, the individual will have the same distribution options as other Plan participants.

### D. Other Terms of the Settlement.

 **1.** **Independent Fiduciary.** Defendant Dynegy, Inc. shall take such action as necessary to require that Dismissed Defendant Dynegy Inc. Benefit Plans Committee retains an independent fiduciary with regard to the Plan's Dynegy stock for a period of at least eighteen months from the date of entry of Final Approval. (Exh. A, § 7.5.)

 **2.** **Independent Fiduciary Approval of Settlement.** In order to comply with Department of Labor Class Exemption 2003-39, which is designed to ensure that settlement of fiduciary litigation does not constitute a prohibited transaction, the Settlement will be reviewed by an Independent Fiduciary (not necessarily the same independent fiduciary mentioned in Section II.D.1 above). The Settlement is contingent upon the grant by the Independent Fiduciary of releases on behalf of the Plan of the same claims released by Plaintiffs, at least five days before the date set for hearing on final approval of the settlement. Defendants shall select the Independent

Fiduciary and shall pay all costs, fees, and expenses related to the Independent Fiduciary.  (Exh. A, § 2.2.)

3.   **Resolution of Issues with the Department of Labor.**  The Settlement is contingent upon resolution, to the satisfaction of Defendants and their insurer, of any concerns the Department of Labor has regarding the Released Claims.  (Exh. A, § 2.3.)

4.   **Attorneys' Fees, Costs, Expenses**.  All attorneys' fees, costs, and expenses approved by the Court will be paid out of the Settlement Fund. Defendants will not oppose Class Counsel's petition for such fees, costs, and expenses.  (Exh. A, § 10.1.)  Class Counsel will limit their petition to costs plus attorneys' fees of 20% of the Settlement Fund after costs.  Thus, attorneys' fees will not exceed $3.58 million.

5.   **Service Incentive Payments**.  Defendants will not oppose Class Counsel's petition for payment of service incentive compensation of up to $10,000 to each of the three named Plaintiffs, which shall be paid out of the Settlement Fund.  (Exh. A, § 10.1.)

6.   **Release and Non-Admission**.  On behalf of themselves and the Settlement Class, Plaintiffs will release all claims against all Releasees that were or could have been brought in the lawsuit.  Releasees shall mean the following: Defendants, any person or entity which served as a named or functional fiduciary under the Plan, the Representatives of any Defendant or such person or entity, and Underwriter.  Defendants deny that they have committed any violations of ERISA or any other law and deny all allegations of wrongdoing with respect to the claims alleged in the action and other released claims.  (Exh. A, §§ 3.1, 3.2, 1.35.)

7.   **Notice to the Settlement Class.**  A Settlement Administrator shall be responsible for giving notice to the Class in a form to be approved by the Court.  Defendants will provide names, present or last known addresses, and upon request of the Settlement Administrator, Social Security numbers, of Settlement Class members, including information available to them from the records of any other pension plan(s) sponsored by any Defendant.  (Exh. A, § 4.3.)  Plaintiffs request that the Court approve the form of Class Notice appended as Exhibit A to the Proposed Findings and Order, and the summary notice for publication appended as Exhibit B to the Proposed Order.  (Exh. A, §§ 2.4.2, 8.2.)

## IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL.

### A.   The Standard for Preliminary Approval.

A class action may not be settled or compromised without approval by the district court. Fed. R. Civ. P. 23(e); *see Amchem Products Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  The law encourages settlement of class actions, and a voluntary settlement is the preferred method of class action resolution. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985).

Approval under Rule 23(e) involves a two-step process in which the court (1) determines whether the proposed settlement deserves preliminary approval, and if so, then directs notices to the class for comment and then, after notice is given to class members, (2) determines whether final approval is warranted. *See Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

The request for preliminary approval, which is currently before the Court, seeks an "initial evaluation" of the fairness of the proposed settlement, a determination that is normally made by a court on the basis of written submissions and informal presentation from the parties. Manual for Complex Litigation, § 21.632 (4th ed. 2004). The purpose of the preliminary approval process is to determine whether the proposed settlement is within the "range of reasonableness of a settlement that ultimately could be given final approval by the Court" and thus, whether notice to the class of the settlement's terms and conditions, and the scheduling of a formal fairness hearing, is worthwhile. *See Tucker v. Walgreens Co.*, 2007 WL 291558, at *3 (S.D. Ill. Oct. 5, 2007); 4 Alba Conte et al., *Newberg on Class Actions* § 11.25 (4th ed. 2002); *see also Armstrong*, 616 F.2d at 314. The purpose of this motion is to determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *See Armstrong*, 616 F.2d at 314.

### B.   The Proposed Settlement Is the Result of Arm's-Length, Informed Negotiations Following Hard-Fought Litigation.

The proposed Settlement resulted from extensive arm's-length negotiations under the auspices of the Seventh Circuit's mediation program. The mediation process included several telephonic settlement discussions and two days of face-to-face meetings in Chicago, Illinois. (Lewis Dec. ¶ 4.) Throughout the settlement negotiations, the parties were advised by attorneys, consultants and experts, including individuals with expertise in ERISA fiduciary liability issues and computing potential damages in cases involving ERISA fiduciary liability. (Lewis Dec. ¶ 5.)

The Settlement Agreement was executed only after hard-fought, vigorous litigation of many issues in the case. Prior to beginning settlement negotiations, counsel completed extensive

1   discovery; briefed multiple motions, including a motion to transfer venue, motions to dismiss, and

2   a motion for class certification; and briefed the Rule 23(f) petition for permission to appeal and

3   the subsequent appeal from class certification.  (*See* Lewis Dec., ¶ 3.)  *See also Lively v. Dynegy,*

4   *Inc.*, 2007 WL 685861 (S.D. Ill. Mar. 20, 2007) (order on class certification); *Lively v. Dynegy,*

5   *Inc.*, 420 F. Supp. 2d 949 (S.D. Ill. 2006) (order on motions to dismiss).

6         **C.**    **The Proposed Settlement Will Provide Significant Benefits to the Class.**

7         The settlement of this action for the sum of $17,900,000.00 represents an excellent and

8   efficient result for the Class of approximately 2,768 members, particularly in light of the

9   substantial risks Plaintiffs faced.  This Settlement is the result of vigorous advocacy and lengthy

10   negotiations by counsel for all parties, who are experienced in litigation under ERISA and in other

11   complex litigation.  *See Lively*, 2007 WL 685861, at *17 (appointing class counsel).

12         Plaintiffs' Counsel believe that the Settlement Agreement is fair, reasonable, and adequate.

13   In addition to the uncertain outcome of the case and the wide range of potential recoveries even in

14   the event of success, Plaintiffs and their attorneys considered the settlements reached and

15   approved by federal courts in two similar cases involving 401(k) plan investments in Dynegy

16   stock.  One of these was *Schied v. Dynegy, Inc.*, No. H-02-3076 (S.D. Tex.), which involved the

17   401(k) plan covering Dynegy's employees ("*Schied*").  The other was *Shannahan, et al., v.*

18   *Dynegy, Inc., et al.*, No. 4:2006cv00160 (S.D. Tex.), which involved the plan covering Illinois

19   Power's salaried employees ("*Shannahan*").  Plaintiffs and their attorneys believe that the net

20   recovery to the Plan in this case will be proportional to the recovery in *Schied*, taking into

21   account the smaller amount of Dynegy stock owned by the Plan in this case.  (Lewis Dec. ¶ 6.)

22   Plaintiffs and their attorneys believe that the net recovery to the Settlement Class here will be

23   almost double the net recovery in *Shanahan*, despite the fact that the plan at issue in *Shannahan*

24   held almost the same amount of Dynegy stock as the Plan here.  (Lewis Dec. ¶ 6.)  At the time the

25   Settlement was reached, both sides had a full understanding of the strengths and weaknesses of

26   the claims and defenses.  The Settlement payment alone falls well within the range of

27   reasonableness warranting notice to the Class and should be preliminarily approved by the Court.

28         Additionally, the Settlement Agreement provides for injunctive relief.  The Agreement

provides that Defendant Dynegy will take such action as necessary to require that the Plan retains an independent fiduciary with regard to the Plan's Dynegy stock for a period of at least eighteen months from the date of entry of Final Approval.  Although Dynegy currently employs an independent fiduciary to monitor the Dynegy stock holdings in the Plan, it is under no formal obligation to do so.  The Settlement Agreement creates such an obligation, ensuring future protection of Plan participants.

### D.    The Requested Attorneys' Fees and Payments to the Class Representatives for Service to the Class Are Reasonable.

The Settlement provides significant relief for all Class members with respect to the claims asserted in the lawsuit.  In addition, it provides that the three named Plaintiffs may seek service incentive compensation payments of up to $10,000, which they intend to do by motion in conjunction with their motion for final approval of the Settlement.  Preliminarily, however, Plaintiffs note that the service incentive payments are reasonable.  The service incentive compensation to each named Plaintiff does not unduly favor segments of the class, because these service incentive payments are intended to recognize the named Plaintiffs' significant time, expense, and efforts expended on behalf of the Class.  *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 571-72 (7th Cir. 1992) (holding that incentive compensation payments to class representatives are necessary to induce named plaintiffs' participation, and should be used to compensate plaintiffs for their risk and time); *Karraker v. Rent-A-Center, Inc.*, 492 F.3d 896, 899 (7th Cir. 2007) (holding that in some class actions, incentive compensation to class representative is necessary to induce plaintiffs to assume the risks associated with being the named plaintiff).

In this case, the named Plaintiffs performed important services for the benefit of the Class. After retaining counsel, Plaintiffs provided information regarding the Plan during lengthy interviews, produced relevant documents, responded to interrogatories, went through deposition preparation and depositions, attended court hearings, participated in the mediation process, and worked with Plaintiffs' counsel throughout the case.  The named Plaintiffs missed several days of work over the course of the litigation to attend to their obligations in the litigation, most significantly for their depositions and to participate in the mediation.  Accordingly, these payments

1    are appropriate and justified as part of the overall Settlement in light of these individuals' services

2    to and risks taken on behalf of the Class.[4]  The proposed Class Notice gives notice to class

3    members of these payments so that they may take the payments into account in evaluating the

4    Settlement.

5            The Settlement Agreement also provides that Class Counsel may move for payment out of

6    the Settlement Fund of costs and expenses, and of attorneys' fees.  Class Counsel plan to petition

7    for attorneys' fees of 20% of the total recovery after payment of costs (approximately $3.58

8    million).  Awards of attorneys' fees from common funds created on behalf of a class often

9    represent 20% to 30% of the fund recovered.  *See Florin v. Nationsbank of Georgia*, 60 F.3d

10   1245, 1248-49 (7th Cir. 1995).  Thus, the planned request will be at the bottom end of the typical

11   range.  The requested attorneys' fees percentage is also described in the Class Notice so that

12   Class members may object.

13          **E.**      **The Proposed Plan of Allocation Is Reasonable.**

14                   **1.**      **The Plan of Allocation.**

15          Each Class member's share of the net settlement proceeds will be based on the

16   proportional share, compared to the shares of other Class members, of the Plan's losses related to

17   its investments in Dynegy stock allocated to the Class member's Plan account during the Class

18   Period (February 1, 2000 to January 17, 2008).  The proposed plan for determining those

19   proportional shares, described in Section III.C above, is designed to ensure that (a) Class

20   members whose accounts lost the most value in Dynegy stock receive the proportionally largest

21   share of the Settlement Fund; (b) all Class members whose Plan accounts decreased because of

22   the Plan's losses on Dynegy stock at any time during the Class Period will have a share of the

23   Settlement Fund allocated to their Plan accounts; and (c) no Class members are unfairly doubly

24   compensated.  To accomplish these goals, the Plan of Allocation takes into consideration the

25   opening balance of Class members' Dynegy stock fund accounts at the start of the Class Period.

26

27          [4]  In addition to service compensation, the named Plaintiffs will receive shares of the

28   Settlement Fund under the Plan of Allocation applicable to all class members.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 05-63 MJR                                                                       Page 10

It then takes into consideration additions of Dynegy stock into Class members' Dynegy stock fund accounts during later time periods, giving slight additional weight to additions of Dynegy stock made to Class members' accounts during periods following key events that Plaintiffs believe were more likely to result in their proving that Defendants should have known that Dynegy stock was an imprudent investment for the Plan.  (*See* § 2 below.)

Next, the Plan of Allocation subtracts transfers out of Class members' Dynegy stock fund accounts during the Class Period, because Class members received those funds at the time of those transfers; that is, if the Plan of Allocation did not subtract the amounts transferred out, those Class members would receive double compensation for those portions of their accounts. Lastly, it subtracts amounts in Class members' Dynegy stock fund accounts at the end of the Class Period.  As with transfers out of Dynegy stock, the purpose of subtracting current balances is to avoid double compensation.

### 2.    Key Dates Affecting the Plan of Allocation.

As mentioned above, the proposed Plan of Allocation gives slightly greater weight to additions of Dynegy stock into Class members' accounts during certain portions of the Class Period.  These time periods are based on dates when, in the judgment of Class Counsel, significant events occurred that increased the likelihood of success in the litigation; that is, Class Counsel believe that these events strengthened  Plaintiffs' claims that Defendants should have frozen new investments of Plan assets in Dynegy stock and/or completely eliminated Dynegy stock as an investment.

When Dynegy acquired Illinois Power, effective February 1, 2000, the Plan's existing investment in Illinois Power stock was converted to an investment in Dynegy stock.  The Plan and its participants ultimately suffered losses on those holdings of existing stock.  As a result, the amounts allocated to Class Members' accounts as of February 1, 2000, will be taken into consideration under the proposed Plan of Allocation.

However, given Plaintiffs' claims, acquisitions of Dynegy stock after February 1, 2000, were more likely to support a claim for breach of fiduciary duty because Plaintiffs claimed that, even if the fiduciaries did not have to liquidate pre-existing investments in that stock (the former

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 05-63 MJR                                                                                    Page 11

Illinois Power stock), they should have ceased new investments in Dynegy. Thus, the first time period that receives additional weight is the time period from February 1, 2000, to July 31, 2000, the date on which Plaintiffs allege the Dynegy Benefits Plan Committee took over the Plan from Illinois Power. Additions to Class members' Dynegy stock fund accounts during this time period are multiplied by 1.1 for purposes of the Plan of Allocation.

The next period runs from August 1, 2000, through July 31, 2001. The first of these dates is the day after the Dynegy Benefits Plan Committee took over the actual management of the Plan. In Plaintiffs' view, any argument by Defendants that the Plan's fiduciaries did not know of problems at Dynegy as of February 1, 2000 (because Illinois Power allegedly was continuing to oversee the Plan at that time), would have been eliminated once Dynegy took over direct management of the Plan in late July. In short, Class Counsel believe that Plaintiffs' chances of success on the imprudence claim would be higher for the time period after Dynegy employees began managing the Plan. As a result, additions to Class members' Dynegy stock fund accounts after July 31, 2000 (though July 31, 2001) are multiplied by 1.2.

The next trigger date, July 31, 2001, is during the period when Dynegy's stock price was allegedly inflated due to its execution of Project Alpha, one of the main financial activities that formed the basis for Plaintiffs' allegations that Dynegy's stock was an imprudent investment for the Plan. Plaintiffs' counsel believe that the execution of Project Alpha further increased Plaintiffs' chances of demonstrating that the fiduciaries should have known Dynegy stock was an imprudent investment. Therefore, additions to Class members' Dynegy stock fund accounts after that date (through April 30, 2002) are multiplied by 1.3.

April 30, 2002, the end date for the foregoing period, is a few days after the first Wall Street Journal article questioning Dynegy's accounting practices was published. From that time, as more and more information became public, Dynegy's stock price began to fall to its true value. Thus, additions to Class members' Dynegy stock fund accounts after that date are credited at 1.0 rather than with a multiplier, because the purchase prices were not as inflated as those of earlier purchases.

This proposed Plan of Allocation is reasonable because it ensures that no Class member is

arbitrarily prevented from receiving a share of the Settlement Fund due to the happenstance of having entered or exited the Plan at any particular time.  In contrast, if the Plan of Allocation accounted for holdings only as of a single particular date, Class Members who happened to have begun employment after that date would not receive any share of the Settlement proceeds, even if Plan losses were allocated to their Plan accounts during the Class Period by reason of a diminution in the value of Dynegy stock.  Similarly, Class members who left the Plan before the chosen date, including by retiring or rolling their accounts into a new employer's plan (as many did when Dynegy sold off part of its operations), would be excluded from receiving a share of the Plan's recovery.  The proposed Plan of Allocation avoids that unfairness.

At the same time, by slightly weighting the allocation in light of actual events during the key period at issue in the lawsuit, the proposed Plan of Allocation balances the inclusiveness of using multiple dates against the fact that losses suffered by Class members' were greater to the extent that additions to their Dynegy stock fund accounts were greater during the stock's period of alleged fraud-engendered inflation, and the fact that as a result of key events during that period, Plaintiffs' likelihood of success on their claims increased.

Because the Plan of Allocation reasonably balances the interests of all Class Members, it is worthy of preliminary approval.

> **3.    All Class Members Will Receive Their Settlement Shares as Tax-Deferred Retirement Funds, Ensuring That Class Members Receive Maximum Value From the Settlement.**

The Settlement Provides that the Class members' settlement recovery will be paid into the Plan and allocated among Class members' accounts according to the Plan of Allocation.  (Exh. A, § 8.3.4.)  For those Class members who no longer have an account in the Plan, an account will be re-established, enabling those Class members to roll the funds over into an individual retirement account or another employer's retirement plan.  Thus, the Settlement gives Class members the ability to obtain for their shares of the Settlement fund the favorable tax treatment afforded qualified retirement plan funds.

**F.   The Class Definition Should Be Modified to Include Plan Participants Excluded From the Certified Class.**

The Court previously certified a Class in this action.  *See Lively*, 2007 WL 685861.  In that order, the Court granted in part and denied in part Plaintiffs' motion for class certification.  In certifying a Class with regard to Plaintiffs' First Claim for Relief, the Court found that all of the requirements of Fed. R. Civ. P. 23(a) were met, that the claim was appropriate for certification under Fed. R. Civ. P. 23(b)(1)(b), and that Plaintiffs' Counsel met the standard set forth in Fed. R. Civ. P. 23(g).  The Court appointed Plaintiffs' Counsel as Class Counsel.  The Court, however, excluded from the certified class former employees who had received distributions of their benefits from the Plan.  *See Lively*, 2007 WL 685861, at *5.

The parties now seek to modify the class definition for purposes of this Settlement to provide that the Class includes former employees who have received distributions of their benefits from the Plan.  After certification of a class, a court retains authority to modify the class definition, or to make other adjustments that it finds to be appropriate.  Fed. R. Civ. P. 23(c)(1)(c).  At the time of the Court's class certification decision, the law of the Seventh Circuit was unclear on the issue of whether former employees who had taken distributions from a defined contribution plan had standing to sue plan fiduciaries under ERISA.  District courts in other circuits had reached varying conclusions.  Plaintiffs intended to appeal the Court's ruling.  As discussed above, since the Court's decision, the Seventh Circuit has clarified that former employees who have "cashed out" of a defined contribution plan have standing to sue to restore assets to the plan because they would become eligible for additional benefits as a result of prevailing in such a suit.  *See Harzewski*, 489 F.3d at 804.  Plaintiffs believe that, if this case were to go forward and if the class certification survived Defendants' appeal, *Harzewski* would require modification of the class definition.  Without conceding that Plaintiffs are correct, Defendants have agreed in the Settlement Agreement that, for purposes of settlement, the class definition should be modified to include these former employees.  The parties agree that this modification results in a reasonable settlement class.  Thus, because the parties have agreed to include former employees in the class definition for the purposes of settlement, and this inclusion is consistent

1   with current Seventh Circuit law, this Court should modify the class definition.

2   **V.      THE NOTICE AND PLAN OF NOTICE SHOULD BE APPROVED.**

3          Once the parties obtain preliminary approval of the settlement, Rule 23(e) requires that the

4   court direct notice in a reasonable manner to all class members who would be bound by the

5   proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B); *see Mangone v. First USA Bank*, 206 F.R.D.

6   222, 231-32 (S.D. Ill. 2001).  Although the precise form of notice is discretionary with the court,

7   a proper notice should (1) describe the facts underlying the action and the class, (2) describe the

8   terms of the settlement, (3) disclose any benefits provided to class representatives, (4) provide

9   information regarding attorneys' fees, (5) state the time and place of the final hearing, (6) provide

10  counsel's contact information and instructions on how to object and/or make inquiries, and (7)

11  explain the procedure for allocation.  *Manual for Complex Litigation* § 21.312 (4th ed. 2004).

12  Here, the proposed notice to be mailed to Class members provides information on all of these

13  subjects and informs class members about their rights under the Settlement as well as their right to

14  be heard at the final Fairness Hearing.  (*See* Exhibit A to proposed Preliminary Approval Order.)

15  Thus, the form of notice should be approved.  The summary notice to be published in newspapers

16  also describes the facts underlying the action, identifies the scope of the Settlement Class, briefly

17  describes the Plan of Allocation and requested attorneys' fees, and describes how Class members

18  can obtain the full-length notice or other further information about the Settlement.  (*See* Exhibit B

19  to proposed Preliminary Approval Order.)  Thus, the proposed form of notice and the summary

20  notice meet the standards of due process and Rule 23, and should be approved.

21         Rule 23(e) also gives the district court discretion as to the manner of the notice.  Fed. R.

22  Civ. P. 23(e)(1) (requiring that the district court "direct notice in a reasonable manner").  It is well

23  established that notice sent by first class mail is sufficient when the names and addresses of the

24  class members are known.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974);

25  *Manual on Complex Litigation* § 21.311 (4th ed. 2004) (explaining that individual notice via mail

26  is preferred when names and addresses are known).  A combination of mail notice and publication

27  notice may also be sufficient.  *See Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).  Here, the

28  Settlement contemplates notice to the class by a combination of U.S. Mail and publication of the

summary notice in local newspapers.  (Exh. A, § 1.6.)  Plaintiffs expect that the mailed notice will reach virtually all class members because Plan records will provide up-to-date addresses for nearly all participants and former participants.  As a matter of extra care to reach Class members, publication of the summary notice will enhance access of the class to information about the Settlement.  The summary notice will be published in nine different newspapers throughout southern and central Illinois.  (*See* proposed Preliminary Approval Order, ¶ 4.)

Further, the notice allows ample time for Class members to object or state an intention to appear at the Fairness Hearing.  The Notice will be mailed no later than 60 days before the Fairness Hearing, and objections are due fourteen days before the Fairness Hearing.  (*See* proposed Preliminary Approval Order, ¶¶ 4-5.)  This allows class members 45 days to analyze the Class Notice, consult their own counsel if desired, and object to the Settlement if they so desire.  Courts routinely approve plans of notice that allow less time for class members to object.  *Newberg* § 8.37 (noting that no rigid minimum time interval applies and that most approved settlements show a range of 30 to 60 day deadlines to object, opt out, or file claims).

Accordingly, these procedures are consistent with due process, meet the requirements of Rule 23, and should be approved.

## VI.   THE COURT SHOULD ESTABLISH DATES FOR EFFECTUATING FINAL APPROVAL OF THE SETTLEMENT.

The Parties respectfully request a Fairness Hearing Date on or shortly after June 2, 2008.  The dates of mailing and publishing notice, for class member objections, etc. would then be filled in to the Notice by reference to the Fairness Hearing Date.

## VII.   THE SETTLEMENT ADMINISTRATOR SHOULD BE APPROVED.

Through a competitive bidding process, Plaintiffs' Counsel have selected Settlement Services, Inc. as the Settlement Administrator.  Settlement Services, Inc., has over 30 years' experience administering complex class action settlements.  *See* www.settlementservicesinc.com. Plaintiffs' Counsel have personal experience working with Settlement Services, Inc. on other class action settlements and know Settlement Services, Inc. to be a reputable and competent settlement administrator.  (Lewis Dec., ¶ 12.)  Pursuant to the Settlement Agreement, Plaintiffs request that

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 05-63 MJR                                                                          Page 16

the Court approve Settlement Services, Inc., as the Settlement Administrator.  (*See* Exh. A, §

1.40.)

**VIII.   CONCLUSION.**

For the reasons set forth above, the proposed Settlement meets the requirements for this

Court's preliminary approval, and the proposed notice meets the requirements of Rule 23.


Dated:  February 13, 2008                                Respectfully submitted,

                                                         LEWIS, FEINBERG, LEE,
                                                         RENAKER & JACKSON, P.C.

                                              By:        /s/ Teresa S. Renaker

                                                         Teresa S. Renaker
                                                         Jeffrey Lewis
                                                         Margaret E. Hasselman

                                                         SCHUCHAT, COOK & WERNER

                                                         James I. Singer
                                                         Matthew B. Leppert

                                                         Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

DENNIS LIVELY, et al.,              )
                                    )
                Plaintiffs,         )
                                    )
        vs.                         )        Case No. 05-63 MJR
                                    )
DYNEGY, INC., et al.,               )
                                    )
                Defendants.         )
                                    )

CERTIFICATE OF SERVICE

        I hereby certify that on February 13, 2008, I electronically filed Plaintiffs' Unopposed

Motion for Order Conditionally Amending Definition of Certified Class for Settlement Purposes,

Preliminarily Approving Proposed Settlement, Approving Form and Dissemination of Class

Notice, Approving Settlement Administrator, and Setting Date for Hearing on Final Approval,

and the Declaration of Jeffrey Lewis in support thereof, with the Clerk of the Court using the

CM/ECF system which will send notification of such filing(s) to the following:

| | |
|---|---|
| James I. Singer | jis@schuchatcw.com |
| Jeffrey Lewis | jlewis@lewisfeinberg.com |
| Matthew B. Leppert | mbl@schuchatcw.com |
| Margaret E. Hasselman | mhasselman@lewisfeinberg.com |
| Rhona S. Lyons | rsl@schuchatcw.com |
| Christopher T. Hexter | cth@schuchatcw.com |

**Attorneys for Plaintiffs,**

| | |
|---|---|
| Morgan D. Hodgson | mhodgson@steptoe.com |
| Charles L. Joley | cjoley@ilmoattorneys.com |
| Marc E. Levin | mlevin@steptoe.com |
| Paul J. Ondrasik | msherman@steptoe.com |

**Attorneys for Defendants Dynegy, Inc.; Dynegy Midwest Generation, Inc.; Louis Dorey, Marian Davenport, Alec Dreyer, John Ford, Andrea Lang, Tom Linton, Lisa Metts, Milton Scott, R. Blake Young, Larry Altenbaumer, Cristin Cracraft, Melissa Fox, Pryor Lindsey, and Nicholas Caruso,**

| | |
|---|---|
| Jeffrey S. Russell | jsrussell@bryancave.com |
| Thomas E. Wack | tewack@bryancave.com |

**Attorneys for Defendant Illinois Power Company,**

PLS.' NOTICE OF SUPP. AUTH. IN SUPPORT OF CLASS CERTIFICATION
Case No. 05-63 MJR

Russell K. Scott        rks@greensfelder.com
Michael M. Wilson       mwilson@akingump.com
Dayna L. Johnson        dlj@greensfelder.com

**Attorneys for Robert D. Doty**

Respectfully submitted,

/s/ Teresa S. Renaker
Teresa S. Renaker
LEWIS, FEINBERG, LEE, RENAKER
   & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612-2509
(510) 839-6824
trenaker@lewisfeinberg.com