Jeffrey Lewis, *Pro Hac Vice*
Teresa S. Renaker, *Pro Hac Vice*
Margaret E. Hasselman, *Pro Hac Vice*
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612
Telephone (510) 839-6824
Facsimile (510) 839-7839

James I. Singer, Illinois Bar No. 02620499
Matthew B. Leppert, Illinois Bar No. 6283363
SCHUCHAT, COOK & WERNER
1221 Locust Street, Second Floor
St. Louis, MO 63103
Telephone (314) 621-2626
Facsimile (314) 621-2378

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS LIVELY, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>DYNEGY, INC., et al.,<br><br>　　　　　　Defendants. | Case No. 05-63 MJR<br><br>Date:　September 4, 2008<br>Time:　1:30 p.m. |

**PLAINTIFFS' UNOPPOSED MOTION FOR AWARD
OF ATTORNEYS' FEES AND COSTS;
MEMORANDUM IN SUPPORT THEREOF**

## **TABLE OF CONTENTS**

Page No.

I. PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. THE FEES AND COSTS REQUESTED ARE FAIR AND REASONABLE.. . . . . . . . . . 2

    A. Fees Should Be Awarded as a Percentage of the Fund.. . . . . . . . . . . . . . . . . . . . . . 3

    B. The Percentage of Recovery Award Requested by Class Counsel Is Below What the Market Would Have Paid the Attorneys for Their Services Had They Negotiated Their Fee at the Beginning of the Case.. . . . . . . . . . . . . . . . . . . . . 4

        1. The Requested Twenty-Percent Award Is At or Below the Market Rate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2. The Class Faced Substantial Risk at the Outset of the Litigation.. . . . . . . . 6

    C. Counsel's Expenses Were Reasonably Incurred, Necessary to the Prosecution of this Action, and Should Be Reimbursed... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI. CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# TABLE OF AUTHORITIES

**Page No.**

**FEDERAL CASES**

Beam v. HSBC Bank USA, No. 02-CV-0682 (W.D.N.Y. Nov. 21, 2005). . . . . . . . . . . . . . . . . . 5

Berger v. Xerox Corp. Retirement Income Guarantee Plan, 2004 WL 287902
(S.D. Ill. Jan. 22, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Blum v. Stenson, 465 U.S. 886 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Boeing Co. v. Van Gemert, 444 U.S. 472 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cokenour v. Houshold Intern., Inc., 2004 WL 725973 (N.D. Ill. Mar. 31, 2004). . . . . . . . . . . . 5

Cooper v. IBM Personal Pension Plan, 2005 WL 1981501(S.D. Ill. Aug. 16, 2005). . . . . . . . 3, 4

Fisher v. J.P. Morgan Chase & Co., 230 F.R.D. 370, 375 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . 6

Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560, 563 (7th Cir. 1994).. . . . . . . . . . . . . . 2, 3

Goldsmith v. Technology Solutions Co., 1995 WL 17009594 (N.D.Ill.,1995).. . . . . . . . . . . . . 4

In re CMS Energy ERISA Litig., 2006 WL 2109499 (E.D. Mich. June 27, 2006). . . . . . . . . . . 5

In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861 (S.D. Tex. 2004). . . . . . . . . . . . . . . . . . 5

In re Healthsouth Corp. ERISA Litig., 2006 WL 2109484 (N.D. Ala. June 28, 2006). . . . . . . . 5

In re McKesson HBOC, Inc. ERISA Litigation, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002). 6

In re Providian Financial Corp., 2003 WL 22005019 (N.D. Cal. June 30, 2003). . . . . . . . . . . . 5

In re Schering-Plough ERISA Litig., 387 F. Supp. 2d 392
(D.N.J. 2004), rev'd, 420 F.3d 231 (3d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Synthroid Mktg. Litig., 325 F.3d 974, 975 (7th Cir. 2003). . . . . . . . . . . . . . . . . . . . . 3, 4, 5

In re Worldcom, Inc. ERISA Litigation, 2004 WL 2338151. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig., 364 F. Supp. 2d 980.. . . . . . . 5

Langbecker v. Electronic Data Systems Corp., 476 F.3d 299 (5th Cir. 2007).. . . . . . . . . . . . . . 6

Lively v. Dynegy, Inc., 2007 WL 685861 (S.D. Ill. Mar. 2, 2007). . . . . . . . . . . . . . . . . . . . . 1, 3

Lively v. Dynegy, Inc., 420 F. Supp. 2d 949 (S.D. Ill. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Milofsky v. American Airlines, Inc., 2003 WL 22398799 (N.D. Tex. Sept. 24, 2003), aff'd, 404
F.3d 338 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Montgomery v. Aetna Plywood, Inc., 231 F.3d 399, 408-09 (7th Cir. 2000). . . . . . . . . . . . . . . 3

Rogers v. Baxter Int'l, Inc., 521 F.3d 702, 706 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Sutton v. Bernard, 504 F.3d 688, 692 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Trustees v. Greenough, 105 U.S. 527 (1881).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Williams v. General Elec. Capital Auto Lease, 1995 WL 765266 (N.D. Ill. Dec. 26, 1995), rev'd on other grounds, 457 F.3d 636 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**FEDERAL STATUES**

ERISA § 404(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**OTHER AUTHORITIES**

1 Alba Conte, Attorney Fee Awards § 2:8 (3d ed. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Manual for Complex Litigation § 14.121 (4th ed. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## I. PRELIMINARY STATEMENT

As a result of the hard fought litigation and settlement negotiations in this matter (the "Action"), an agreement (the "Settlement") was reached that created a cash Settlement Fund of $17.9 million, plus interest earned since May 12, 2008, for a class of 2,839 participants in the Illinois Power Company Incentive Savings Plan for Employees Covered Under a Collective Bargaining Agreement (the "Plan"). The Court preliminarily approved the settlement on April 30, 2008. (Docket No. 180.) The Court had previously appointed the law firms of Lewis, Feinberg, Lee, Renaker, & Jackson, P.C. ("LFLRJ") and Schuchat, Cook, & Werner as Class Counsel. *See Lively v. Dynegy, Inc.*, 2007 WL 685861, at *17 (S.D. Ill. Mar. 2, 2007).

For the reasons set forth herein, Plaintiffs respectfully move the Court for (1) reimbursement of the costs incurred by counsel in litigating the Action and effectuating the Settlement, in the amount of $67,225.36, and (2) attorneys' fees in the amount of $3,566,550, representing 20% of the Settlement Fund after reimbursement of costs.

## II. STATEMENT OF FACTS

The Action commenced in January 2005, when the three Plaintiffs filed their Complaint, seeking to recover losses to the Plan alleged to have been suffered due to breaches of fiduciary duty by the Defendants in investing and permitting investment of Plan assets in stock of Dynegy, Inc., the sponsoring employer, during a period when, according to Plaintiffs, Defendants knew or should have known that the stock was an imprudent investment. As demonstrated by the Docket, and as set forth in Plaintiffs' Memorandum in Support of Plaintiffs' Unopposed Motion for Order Amending Class Definition and Approving Class Action Settlement, Settlement Allocation, and Incentive Awards, and for Entry of Final Judgment ("Final Approval Motion") and the Declaration of Teresa S. Renaker in support thereof ("Renaker Final Approval Dec."), for nearly three years, Class Counsel have diligently investigated, litigated, and negotiated in order to obtain a favorable recovery for the Class. Class Counsel performed this work on a fully contingent basis, receiving no compensation for their time and advancing all costs of litigation. (Declaration of Jeffrey Lewis in Support of Plaintiffs' Unopposed Motion for Award of Attorneys Fees and Costs submitted herewith, "Lewis Dec.," ¶ 21.)

The Court-approved Class Notice advised Class members that Class Counsel would ask the Court for reimbursement of expenses and for attorneys' fees of up to 20% of the $17.9 million Settlement Fund. (Declaration of Mark Patton Re: Notice Procedures ("Patton Dec."), Exh. 1, pp. 5, 13.) The notice also advised Class members of their right to object to any part of the Settlement, including specifically their right to object to the requested fee award. (*Id.*, Exh. 1, pp. 2, 3, 13, 14.) No class member has objected to the requested award of costs and fees. (Renaker Final Approval Dec., ¶¶ 11, 12; Patton Dec., ¶ 8.)

As set forth in the motion for final approval, this Settlement is the fruit of hard-fought litigation and good-faith settlement negotiations. The Settlement was negotiated by seasoned ERISA and class action lawyers for both Plaintiffs and Defendants. Class Counsel agreed to represent the Class on a fully contingent basis, bearing the risk that there would be no recovery in the case due to legal and factual obstacles faced by the Class. Moreover, Class Counsel seek a fee award of 20% of the Settlement Fund after reimbursement of expenses, a rate that is lower than the market rate for similar cases. Having achieved a significant benefit for the Class and the tacit approval of the fees and costs from the Class itself, Class Counsel respectfully request reimbursement of costs of $67,225.36 and an award of $3,566,550 in fees.

### III. THE FEES AND COSTS REQUESTED ARE FAIR AND REASONABLE.

#### A. Fees Should Be Awarded as a Percentage of the Fund.

It is well established in this Circuit and elsewhere that where, as here, class counsel successfully create or preserve a common fund, the costs of litigation should be spread among the fund's beneficiaries. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Trustees v. Greenough*, 105 U.S. 527 (1881); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). Under this "equitable" or "common fund" doctrine, attorneys who create a common fund that benefits an entire class are entitled to an award of fees and expenses from that fund as compensation for their work. *Boeing*, 444 U.S. at 478. "The common fund doctrine is based on the notion that not one plaintiff, but all those who have benefitted from litigation should share its costs." *Florin*, 34 F.3d at 563 (internal quotation marks omitted).

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court expressed its preference for

determining reasonable fees as a percentage of the fund under the common fund doctrine. *Id.* at 900 n.16. The Seventh Circuit has likewise approved the use of fund percentages as a reasonable manner of determining attorneys' fees, and has noted the "relative simplicity of administration" inherent in this approach. *See Florin*, 34 F.3d at 566; *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408-09 (7th Cir. 2000). *See also Manual for Complex Litigation* § 14.121 (4th ed. 2004) ("[T]he vast majority of courts of appeals . . . permit or direct district courts to use the percentage-fee method in common-fund cases.") "Thus, '[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class,' particularly where that percentage of the benefit approach replicates the market." *Cooper v. IBM Personal Pension Plan*, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005) (quoting *Williams v. General Elec. Capital Auto Lease*, 1995 WL 765266, *9 (N.D. Ill. Dec. 26, 1995)), *rev'd on other grounds*, 457 F.3d 636 (7th Cir. 2006).

Here, the percentage-of-fund approach replicates the market in the ERISA class action context. Plan participants – that is, employees and retirees – generally cannot afford to pay lawyers on an hourly basis to litigate complex ERISA cases, particularly where a plan's losses may be large but the loss allocated to any individual participant is relatively small. By definition, ERISA class actions do not involve institutional class members, as may be the case in other class actions. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975-76 (7th Cir. 2003) ("*Synthroid II*") (plaintiffs included "third-party payor" class of insurers and health plans, in addition to consumer class). As a result, ERISA class actions are typically litigated on a percentage contingency fee basis, with the attorneys bearing the risk of nonpayment. (Lewis Dec., ¶14; Declaration of Michael M. Mulder ("Mulder Dec."), filed herewith, ¶ 13; Declaration of Marc I. Machiz ("Machiz Dec."), filed herewith, ¶¶ 9-11.)

In this case, the named Plaintiffs did not have the means to retain counsel on an hourly basis (Declaration of Dennis Lively filed herewith, ¶ 2), and there is no reason to believe that any other Class members would have had the ability to do so. *See Cooper*, 2005 WL 1981501, at *4. Michael M. Mulder, a Chicago attorney with twenty-five years' experience litigating complex ERISA class actions, attests that in his experience, percentage fee arrangements are typical in this type of litigation, and no competent counsel would accept a case of this nature other than on a percentage contingency

fee basis. (Mulder Dec., ¶¶ 13, 15.) Class Counsel Jeffrey Lewis, who has been recognized by a judge of this Court as "a nationally recognized expert in prosecuting complex ERISA litigation," *see Cooper*, 2005 WL 1981501, at *4, and who is very familiar with the nationwide ERISA plaintiffs' bar, confirms that attorneys in cases like this one are typically compensated based on a percentage of the common fund. (Lewis Dec., ¶ 14.) Likewise, this Court presumed in appointing Class Counsel that attorneys' fees, if any, in this case would constitute a percentage of the class recovery, if any. *Lively,* 2007 WL 685861, at *17. Accordingly, attorneys' fees in this case should be awarded on the basis of a percentage of the fund, as requested by Class Counsel.

### B. The Percentage of Recovery Award Requested by Class Counsel Is Below What the Market Would Have Paid the Attorneys for Their Services Had They Negotiated Their Fee at the Beginning of the Case.

The Seventh Circuit directs that in deciding fee levels in common fund cases, a district court should "'do [its] best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (quoting *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.2001) ("*Synthroid I*")). Where the attorneys' fee has not been "determined up front," the district court must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Id.* Here, this analysis yields the conclusion that the plaintiffs and Class Counsel would have contracted at the outset of the litigation for a percentage contingency fee of at least 20%.

#### 1. The Requested Twenty-Percent Award Is At or Below the Market Rate.

Class Counsel's requested award of 20% of the settlement fund after reimbursement of costs is at or below the market rate for class action cases generally, and for complex ERISA class action litigation in particular. *See Goldsmith*, 1995 WL 17009594, at *8 (collecting cases awarding fees of approximately one-third of common fund). In *Synthroid*, institutional class members (insurers and other third-party payors of healthcare benefits) negotiated for a 22% contingency fee *after* the defendants had already agreed to a substantial settlement. *Synthroid II*, 375 F.3d at 978, 980 (awarding counsel for consumer class counsel 30% of first $10 million of recovery, 25% of next $10 million, 22% of $20 million to $46 million, and 15% of amount over $46 million, for overall fee of

19.9% of costs); *see Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 2004 WL 287902, at *3 (S.D. Ill. Jan. 22, 2004) (noting that insurance companies in *Synthroid* "negotiated a flat 22% rate even after the risk of the litigation had passed and a recovery was assured").

Had Class Counsel and the Class negotiated a contingency fee at the outset of this litigation – that is, in January 2005 – the market would have dictated a fee of at least 20%. At that time, a prior suit arising out of investment in Dynegy stock by Dynegy's 401(k) plan had resulted in a fee award of 25% of the settlement fund of $30.75 million, after the suit partially survived motions to dismiss. (Lewis Dec., Exh. 1.) *See generally In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004). Likewise, an ERISA breach of fiduciary duty suit in the Northern District of Illinois arising out of plan investment in employer stock had resulted in a fee award of 30% of the settlement fund of $46.5 million, again after the suit partially survived motions to dismiss. (Lewis Dec., Exh. 2.) *See generally Cokenour v. Houshold Intern., Inc.*, 2004 WL 725973 (N.D. Ill. Mar. 31, 2004). Other suits asserting similar claims had resulted in attorneys' fee awards of at least 20%. *See, e.g., In re Providian Financial Corp.*, 2003 WL 22005019 (N.D. Cal. June 30, 2003) (approving settlement of $8.6 million and fee of 25%); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, *11 (S.D.N.Y. Oct. 18, 2004) (approving set-aside for fees of 20% of $47.15 million settlement fund).

A benchmark of 20% or more continues to obtain in ERISA employer stock suits resolved after this case was filed, including in the settlement of a subsequently-filed suit involving investment in Dynegy stock by the Illinois Power Company 401(k) plan for salaried employees. (*See* Lewis Dec., Exh. 3 (order approving settlement of $9.75 million and fee of 25%, including costs, in *Shannahan v. Dynegy, Inc.*, No. 06-cv-00160 (S.D. Tex. Sept. 14, 2007)); Lewis Dec., Exh. 4 (order approving settlement of $9.35 million and fee of 25%, plus costs, in *Beam v. HSBC Bank USA*, No. 02-CV-0682 (W.D.N.Y. Nov. 21, 2005)). *See also In re CMS Energy ERISA Litig.*, 2006 WL 2109499 (E.D. Mich. June 27, 2006) (awarding fee of 28.5% of $28 million settlement fund); *In re Healthsouth Corp. ERISA Litig.*, 2006 WL 2109484 (N.D. Ala. June 28, 2006) (awarding fee of 25% of $28.875 million settlement fund); *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (awarding fee of 25% of $8 million settlement fund).

The declarations in support of Class Counsel's fee application in this case also support a

conclusion that the market rate for attorneys' fees in this type of case is at least 20%. In Mr. Mulder's experience, "a one-third recovery is a representative or typical basis on which lawyers and clients agree in large, complex, expensive, and risky class ERISA litigation like this one." (Mulder Dec., ¶ 13.) Mr. Lewis's declaration also supports the conclusion that a fee of at least 20% is the market rate. (Lewis Dec., ¶14.) Moreover, Marc Machiz, former Associate Solicitor for the U.S. Department of Labor (where he headed the Department's ERISA enforcement), who has prosecuted fiduciary breach class actions, including those involving company stock, since going into private practice, attests that in the only ERISA class action in which a court has selected Class Counsel pursuant to a fee bidding process, he and his co-counsel were selected based on a 20% of common fund bid. (Declaration of March I. Machiz, ¶ 10.) In retrospect, he would not have bid that low. (*Id.*) He has been compensated at higher rates in other similar cases. (*Id.* at ¶ 11.)

Thus, Class Counsel are highly experienced and nationally recognized for their expertise in litigating complex ERISA class actions, including ERISA breach of fiduciary duty cases. They would not have accepted this case on other than a contingent fee basis, and reasonably expected, based on common fund fee recoveries in similar cases, that they would receive a fee in the neighborhood of 25%. Accordingly, the market rate analysis dictates that Class Counsel's requested fee of 20% of the Settlement Fund after reimbursement of costs is reasonable and should be approved.

### 2. The Class Faced Substantial Risk at the Outset of the Litigation.

At the outset of this litigation, Plaintiffs faced a substantial risk of recovering nothing at all on their claims due to the novel questions raised by their case and the unsettled state of the law. At that time, some district courts had held that breach of fiduciary duty claims could not be brought on behalf of an individual account plan, such as the Plan in this case, where fewer than all accounts in the plan were affected by the plan's loss. *See In re Schering-Plough ERISA Litig.*, 387 F. Supp. 2d 392, 399 (D.N.J. 2004), *rev'd*, 420 F.3d 231 (3d Cir. 2005); *Milofsky v. American Airlines, Inc.*, 2003 WL 22398799 (N.D. Tex. Sept. 24, 2003), *aff'd*, 404 F.3d 338 (5th Cir. 2005), *rev'd on reh'g en banc*, 418 F.3d 429 (5th Cir. 2006); *see also Fisher v. J.P. Morgan Chase & Co.*, 230 F.R.D. 370, 375 (S.D.N.Y. 2005). Although this Court correctly rejected this position in ruling on Defendants' motions to dismiss, *Lively v. Dynegy, Inc.*, 420 F. Supp. 2d 949 (S.D. Ill. 2006), at the time the suit

was filed there was no guarantee that it would do so.

Plaintiffs also faced a risk of loss on the question of the interplay between federal securities laws and ERISA's fiduciary duties. At the time this suit was filed, one district court had held that a complaint similar to Plaintffs' failed to state a claim for breach of fiduciary duty for plan fiduciaries' alleged failure to divest a plan of employer stock after learning of accounting irregularities but before the irregularities were made public, because "there was no lawful action that could have been taken by the fiduciaries that would have avoided the subsequent loss occurring after public disclosure of the accounting problems." *In re McKesson HBOC, Inc. ERISA Litigation*, 2002 WL 31431588, at *8 (N.D. Cal. Sept. 30, 2002). While Class Counsel believed, and continue to believe, that this defense would not prove valid in this case, this question remains open in the Seventh Circuit. *Rogers v. Baxter Int'l, Inc.*, 521 F.3d 702, 706 (7th Cir. 2008).

Finally, as set forth in the accompanying motion for final approval submitted herewith, at the outset of this litigation Plaintiffs faced risks regarding still-unresolved questions as to the application of ERISA § 404(c), *see Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007), and the computation of the Plan's loss in the event that Plaintiffs succeeded in proving a breach of fiduciary duty. Taking into consideration the risk of nonpayment, had a fee been negotiated at the outset of the litigation, it undoubtedly would have been at least 20% and likely substantially more. (Lewis Dec., ¶ 15.) In view of this fact and the fact that no Class Member has objected to Class Counsel's fee request, the request should be granted.

**C.  Counsel's Expenses Were Reasonably Incurred, Necessary to the Prosecution of this Action, and Should Be Reimbursed.**

Courts routinely approve reimbursement of necessary and reasonable costs and expenses to counsel who create a common fund. *See* 1 Alba Conte, *Attorney Fee Awards* § 2:8 at 50-51 (3d ed. 2004) ("The prevailing view is that expenses are awarded in addition to the fee percentage."))

As one commentator has written:

> [A]n attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved. The equitable principle that all reasonable expenses incurred in the creation of a fund for the benefit of a class are reimbursable proportionately by those who accept benefits from the fund

authorizes reimbursement of full reasonable litigation expenses as costs of the suit.

Conte, *supra*, § 2.19 (citing *Greenough*, 105 U.S. 527). The expenses that may be reimbursed from the common fund are not limited to those taxed in a judgment against an opponent, but instead, encompass "all reasonable expenses." *Id.*

Class Counsel have collectively incurred $67,225.36 in expenses that were necessary and reasonably incurred while pursuing this action. These expenses were tracked in the records maintained by each respective firm. (Lewis Dec., ¶ 20.) The expenses include expert fees, court reporters' fees, travel expenses, photocopying charges, and fees for newspaper publication of the Summary Notice. Because each firm financed these expenses without any guarantee of reimbursement, Counsel had a strong incentive to incur costs at a conservative rate. The resulting expenses were reasonable and necessary for the prosecution of the Action.

## VI. CONCLUSION.

Because the requested fees and costs are reasonable and appropriate under the standards articulated by the Seventh Circuit, and no Class Member has objected to the award, Plaintiffs respectfully request that the Court (1) award Class Counsel $67,225.36 in reimbursement for costs incurred by Counsel in litigating the Action and effectuating the Settlement, to be paid from the Settlement Fund, and (2) award Class Counsel attorneys' fees in the amount of $3,566,550.00 (20% of the Settlement Fund net of costs).

Dated: August 25, 2008

Respectfully submitted,

LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.

By: \_\_\_\_\_/s/_____
Margaret E. Hasselman
Jeffrey Lewis
Teresa S. Renaker

SCHUCAT, COOK & WERNER
James I. Singer
Matthew Leppert

Attorneys for Plaintiffs